## WATT *vs.* CRAWFORD, adm'r, &c. and others.

A third person claiming to be interested in a suit in the court of chancery, but who is not a party to such suit, has no right to interfere with the proceedings therein, without filing a supplemental bill, to make himself a party and protect his rights.

Before any decree or decretal order has been made, in a suit in chancery, by which a defendant therein has acquired rights, the complainant is at liberty to dismiss his bill, upon payment of costs.

But after a decree has been made, in a cause, by which a defendant therein has acquired rights, either as against the complainant or as against a co-defendant in the suit, the complainant cannot dismiss his bill without the consent of all parties interested in the decree; nor can the decree be vacated and the bill dismissed, even on such consent, except upon a rehearing, or by a special order to be made by the court.

Where a decree has been affirmed, upon appeal to the chancellor, the vice chancellor is not authorized to vacate the decree, and to order the complainant's bill to be dismissed; even with the consent of the parties to the suit.

Upon a decree for a sale, by a master, for the benefit of some of the defendants in the suit, as well as for the benefit of the complainant, the complainant's solicitor is entitled to select the master and to place the decree in his hands to be executed, unless the court has directed otherwise.

But where the complainant in the suit has no interest in the execution of the decree, or where he consents to its being executed under the direction of a defendant, who is interested in having the sale made, a stranger to the suit cannot object that the decree was placed in the hands of the master, by the solicitor of such defendant, to be executed.

THIS case came before the chancellor upon appeal, and the facts are sufficiently stated in his opinion.

*H. F. Clark & E. Sandford,* for the appellant.

*J. T. Brady & J. Rhoades,* for the respondents.

THE CHANCELLOR. This is an appeal, by the [defendant Crawford, from an order of the vice chancellor of the first circuit, allowing James Ferris and Claiborne Ferris, the respondents, to enter an order dismissing the bill, in this cause, as against the complainant, and setting aside a sale of the mortgaged premises, under the decree made therein in favor of the defendant James

Crawford; and granting a perpetual stay of the proceedings of the master, under such decree.

The objection appears to be well taken, that the respondent C. Ferris, who was not a party to this suit, had no right to interfere with the proceedings therein, without making himself a party, by filing a supplemental bill to protect his rights. (*Ball* v. *Tannard*, 6 *Mad. Rep.* 275. *Foster* v. *Deacon, Idem*, 59. *Bozon* v. *Bolland*, 1 *Russ. & Myl.* 69.) And the other petitioner, J. Ferris, who is a party to the suit, swears that he has no interest in this application. It is unnecessary, however, to put the decision of this case upon any technical objection to the form of the application; except as an answer to objections of form, which are urged against the appellant's right to proceed under the decree. For the merits of the case, upon the papers before the vice chancellor, were clearly with the appellant Crawford.

By adverting to the facts it is perfectly evident, that there was an unwarrantable attempt to defraud the creditors and the minor children of the decedent, William Crawford, out of the property to which they were entitled. Whether Oakley, the original administrator, was a party to the fraudulent attempt, or was ignorant of his claim to be subrogated to the rights of Watt, as against the mortgaged premises, it is unnecessary to inquire. But when the vigilance of the assistant vice chancellor had frustrated the fraudulent attempt which was made while Oakley was a party to the suit, it became necessary to get rid of the effect of the decree, which had established the right of the administrator *de bonis non;* and for this purpose the stipulation of the 4th of January, 1841, was obtained.

What would have been the effect of a common order to dismiss the bill, in that stage of the suit, upon the right of Crawford, the administrator, to proceed under the decree, without applying to set the order aside as irregularly and improperly obtained, it is not necessary now to inquire; as no such order was in fact entered. The question here is, whether it is either just or equitable, as to the appellant, to permit an order to be entered at this time, upon that stipulation; which stipulation none of the parties had any right to make, without the consent of Crawford,

and which was in fact an actual fraud upon the rights which Crawford had obtained under the decree. Before any decree or decretal order has been made, in a suit in chancery, by which a defendant therein has acquired rights, the complainant is at liberty to dismiss his bill, upon payment of costs. But after a decree has been made, by which a defendant has acquired rights, either as against the complainant or as against a co-defendant in the suit, the complainant's bill cannot be dismissed without destroying those rights. The complainant, in such a case, cannot dismiss, without the consent of all parties interested in the decree; nor even with such consent, without a re-hearing, or upon a special order to be made by the court. (*Lashley* v. *Hogg*, 11 *Ves.* 602.) And in this case, if Bogardus, who was the nominal solicitor for the two defendants whose interests, under this decree, were adverse to each other, was in fact appointed by Crawford as his solicitor, he was guilty of a gross violation of his duty to that client, to attempt to destroy the right which he had acquired under the decree. The other parties interested in the mortgaged premises, who procured this stipulation to be signed by their solicitor, and by the solicitor for the complainant also, well knew, or at least they were bound to know, as honest men, that neither Crawford nor his solicitor could properly consent to such an arrangement, which upon its face was a gross fraud upon the creditors, and upon the orphan children of William Crawford. I am perfectly satisfied, however, from the evidence before me in this case, that the administrator *de bonis non* knew nothing of that fraudulent arrangement; and that the stipulation was a fraud upon him, as well as upon the estate which he represented. The stipulation is therefore a mere nullity, and ought not to have any effect whatever upon the proceedings under the decree.

The appeal from the decree, in the name of Crawford, without his knowledge or consent, and when he had an interest in sustaining that decree, if he had been aware of its existence, appears to have been another device to defraud the creditors and the children of the decedent. And the decree of affirmance, which was subsequently regularly obtained, overreached this fraudulent stipulation; and deprived the vice chancellor of the power to

Watt *v.* Crawford.

enter an order dismissing the bill. For he has no jurisdiction thus to annul a decree which has been affirmed upon appeal to the chancellor. And a part of the decree which was affirmed upon such appeal is that which directs a sale of the mortgaged premises; which premises cannot be sold under the decree, for any purpose, if the bill is dismissed.

I am satisfied also that the instrument called a release, a copy of which is annexed to the moving papers, was obtained by fraud and imposition; and that the account of the manner in which such release was obtained, as given in the affidavit of Crawford, is substantially correct. Indeed the instrument, on its face, corroborates such statement; for it recites that James Ferris has agreed and undertaken to pay all the debts of the estate of W. Crawford. But there is no pretence that J. Ferris ever furnished the administrator *de bonis non* with any evidence of such agreement on his part. And the creditors would never have heard of that agreement, if Crawford's eyes had not subsequently been opened by the proceedings against him before the surrogate. But even if James Ferris had given a bond with sureties to pay all the debts, this release could not stand for a moment. For he was well aware that a decree in favor of Crawford's estate had been made, for a sum much beyond the amount of any debts of the estate which were then existing, and that it was a lien upon real estate which was sufficient to pay it. He therefore knew that this release would be a gross fraud upon the orphan sisters of the administrator, even if such administrator was himself fully aware of all the facts. Again; it appears that James Ferris had no interest in the mortgaged premises at the time of this release. And it is at least doubtful whether a mere stranger, who is not named in the release, and who has paid no consideration therefor, could set it up as a release to himself; even if it was honestly obtained.

It remains to consider whether there was any irregularity, which either of the parties can take advantage of to set aside the sale by the master. After the decree of affirmance, notice was given to the solicitor for these petitioners, or at least to the only one of them who now pretends to have an interest in the

premises, that the premises would be advertised and sold unless the amount of the decree was paid. Notwithstanding this notice, no application to stay the proceedings, upon the ground of irregularity was made by any one, until after the premises had been sold by the master, under the decree. This of itself is a sufficient answer to the objection that the administrator could not proceed to a sale under the decree without an order of the court, allowing him to proceed; instead of the complainant's solicitor. For a party who wishes to set aside a proceeding, upon the ground of a technical irregularity merely, must apply to the court the first opportunity. In this case, therefore, if these petitioners could apply at all, and if there was such a technical irregularity, they should have applied the moment the premises were advertised for sale by the master; instead of waiting until after the whole expenses of the sale had been incurred.

Where a sale is to be had, under a decree, for the benefit of some of the defendants, as well as for the benefit of the complainant in the suit, the complainant's solicitor prima facie has the right to select the master and place the decree in his hands to be executed; unless the court otherwise directs. But where the complainant has no interest in the execution of the decree, or where he consents to its being executed under the direction of the defendant, who is interested in having a sale made, another person who is not a party to the suit, or who has no interest in the question, cannot object that the decree was delivered to the master by the defendant's solicitor, to be executed, instead of the solicitor for the complainant. The sale in this case was therefore properly made.

The order appealed from is erroneous, and must be reversed with costs, to be paid by the respondents J. Ferris and C. Ferris; and their petition must be dismissed with costs to be taxed. And the proceedings are to be remitted to the vice chancellor, to the end that the master may proceed and complete the sale and file his report; so that the purchaser may obtain possession of the premises without further delay.(*a*)

(*a*) The decree of the chancellor, in this case, was affirmed, upon appeal to the court for the correction of errors. (*See Ferris* v. *Crawford*, 2 *Denio*, 595.)