## CHICAGO & ALTON RAILROAD COMPANY and Another. *v.* UNION ROLLING MILL COMPANY.

APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE NORTHERN DISTRICT OF ILLINOIS.

Argued December 6th, 1883.—Decided January 7th, 1884.

*Contract—Equity—Lien—Practice—Rules.*

1. Where, in a suit in equity several defendants have independent rights in the subject-matter of the controversy, and one defendant, having answered setting up his particular right, files a cross-bill to enforce it, and the causes proceed together and are heard together, and an interlocutory decree is entered to protect and enforce the rights thus set up, entitled as of both suits, the complainant in the original suit cannot, unless upon consent, dismiss his bill and thus deprive the defendant of the right acquired by the decree.

2. When one defendant in a suit in equity pleads to the jurisdiction, and another defendant answers setting up independent rights in the subject-matter of the controversy, and no notice is taken of the plea to the jurisdiction, and a final decree is entered sustaining the rights set up in the answer, the complainant cannot have his bill dismissed under the 38th

Rule for failure to reply to the plea : especially when appeal has been taken and the defendant pleading to the jurisdiction is not party to the appeal.

3. Under the statutes of Illinois, Rev. Stat. Ill. ch. 82, § 51, a person who contracted to deliver rails to a railroad company for use in the construction of its road, the deliveries to extend over a period of time, and who complied with his contract, and who commenced proceedings within six months after the date of the last delivery to enforce a lien therefor under the statute, had a valid lien upon the property superior to that acquired by a trust created between the date of the last delivery of the rails and the commencement of the proceedings to enforce the lien ; and such lien was not affected by a special agreement that the contractor should have a lien on the rails till payment, and that the possession of the railroad should be the possession of the contractor ; nor by an agreement to give credit to the purchaser beyond the time within which the statutory lien should be enforced, when the purchaser failed to perform the conditions upon which that credit was agreed to be given.

4. Under the circumstances in this case there was no error in rendering a personal decree against the Chicago & Alton Railroad Company, and awarding execution against it in favor of the contractor.

The following statement of the case was prepared by the court to precede its opinion.

The original bill in this case was filed January 8th, 1876, by John B. Dumont, a citizen of the State of New Jersey, against the Chicago and Illinois River Railroad Company, the Chicago Railway Construction Company, the Chicago and Alton Railroad Company, and the Union Rolling Mill Company, which, for the sake of brevity, will be called respectively the Illinois River Railroad Company, the Construction Company, the Alton Railroad Company, and the Rolling Mill Company, all corporations organized under the laws of the State of Illinois, and Bradford Hancock, as receiver of the Construction Company, and Corydon Beckwith, both citizens of the State of Illinois.

The purpose of the bill was the foreclosure of a deed of trust. The bill averred in substance as follows : On March 1st, 1875, the Illinois River Railroad Company, claiming to be the owner of a railroad constructed and being constructed between Joliet, Will County, and Streator, in La Salle County, in the State of Illinois, and the Construction Company, claiming to be the owner of certain lands in Grundy County in the same State,

entered into an agreement with the Alton Railroad Company by which the Illinois River Railroad Company leased its right of way and its railroad constructed and to be constructed, and all its other property, except engines and cars, to the Alton Railroad Company forever, upon certain terms and conditions therein mentioned. Afterwards, on the same March 1st, 1875, the Illinois River Railroad Company executed and delivered its bonds of that date with interest coupons attached, one thousand in number, and for $1,000 each, payable thirty years after date, with interest at seven per cent., payable semi-annually, and on the same day, jointly with the Construction Company and John H. Rice, its trustee, executed a deed of trust to George Straut to secure the payment of the bonds. The deed of trust conveyed to Straut all the railroad owned or occupied by the Illinois River Railroad Company between Joliet and the Mazon River, and all the property of every kind (except engines, cars, and tools), however and whenever acquired by it between said points, and the railroad company covenanted by said trust deed that it had a perfect title to the railroad and other property so conveyed, subject only to the lease above mentioned. By the same deed the Construction Company and Rice, its trustee, conveyed to Straut its lands situate in Grundy County, Illinois, and covenanted that it had good title thereto, and that the lands were free from encumbrances.

Of said one thousand bonds, only those numbered from 1 to 474 inclusive, and from 701 to 1,000 inclusive, were issued. The interest on these bonds had not been paid. They were all held either by *bona fide* purchasers or pledgees.

The deed of trust provided that in case of default in the payment of any interest on the bonds, or in the performance of any covenant in said deed of trust contained to be performed by the Illinois River Company or the Construction Company, and in case such default should continue six months, then the trustee might take possession of the property conveyed by the deed of trust, and apply the issues and profits thereof to the payment of the liabilities of the Illinois River Railroad Company and the Construction Company, as therein provided. The covenants of seizin, for quiet enjoyment, and against

encumbrances, made by the Illinois River Railroad Company and the Construction Company in the deed of trust contained, were broken on March 1st, 1875, and such default had continued more than six months. On March 1st, 1875, the Illinois River Railroad Company and the Construction Company were indebted to the Rolling Mill Company in a large sum of money for materials furnished for the construction of said road, which the Rolling Mill Company claimed to be a lien thereon, but its claim was subject to the claims of bondholders represented by the complainant.

On September 13th, 1875, John F. Slater, being the holder and owner of bonds numbered from 1 to 474 inclusive, applied to Straut, the trustee, to take such action in the premises as he ought to or might take for the protection of his interest. But Straut, being unable or unwilling to act, resigned his trust, and the complainant was, on September 18th, 1875, in accordance with the provisions of the deed of trust, appointed trustee in his stead, and on September 20th, 1875, Straut conveyed to the complainant, as such trustee, all the property, rights, and powers vested in him by the trust deed.

The prayer of the bill was as follows:

"That an account may be taken of the sum due for principal and interest on said bonds, and of the sums due as liens upon said road, and that the premises described in the deed of trust to George Straut may, by order of this court, be sold for the payment of the same, and that your orator may have such other and further and different relief as to equity may seem meet."

Answers were filed by the Illinois River Railroad Company, the Construction Company, and the Alton Railroad Company, Corydon Beckwith, and Bradford Hancock, in which they took issue upon the averments of the bill.

On January 13th, 1876, the Rolling Mill Company filed an answer, claiming to have a first lien on the railroad and property of the Illinois River Railroad Company, averring that, on August 7th, 1874, it made a contract in writing, of that date, with the Illinois River Railroad Company and the Construction Company for the sale and delivery, at certain prices therein

specified, to said companies of 1,600 tons of steel and 2,500 tons of iron rails, and certain named quantities of iron splices, spikes, and bolts, all to be delivered by December 1st, 1874.

That contract provided that for these materials sixty thousand dollars in cash should be paid, and, for the balance of the price, the companies purchasing the same should give notes, payable in six, eight, ten and twelve months from their dates respectively, executed by the Illinois River Railroad Company and guaranteed in full by the Construction Company and by the stockholders of the Construction Company in proportion to their stock, and, for the further security of said notes, there should be pledged certain bonds of the Construction Company for an amount equal to the aggregate principal of said notes, and secured by a deed of trust, made April 1st, 1874, by the Illinois River Railroad Company and the Construction Company, on the property therein described, constituting the first lien thereon.

It also contains this clause:

"And it is also agreed by said party of the second part that the material so furnished by the said party of the first part shall be used and laid upon the road and road-bed belonging to said Chicago and Illinois River Railroad Company, between the cities of Joliet, in Will County, and Streator, in La Salle County, Illinois; and that until the same be fully paid for, and all of the notes given in payment therefor paid and cancelled, the said party of the first part shall have a lien upon said material furnished by it, and the use and possession of the same by said party of the second part, or either of the corporations constituting the same, or the assignee or assigns of one or both of them shall be the user and possession of said party of the first part."

The answer of the Rolling Mill Company further alleged that the company had delivered a large part of the rails, &c., under said contract; that upon the delivery of the last lot, on or about November 12th, 1874, the purchasing companies gave the Rolling Mill Company notice not to deliver any more rails or other material until the spring of 1875; that the Rolling Mill Company were always ready and willing to deliver the re-

mainder of said rails and other material mentioned in said contract, and that on May 7th, 1875, it gave notice to said purchasing companies that the residue of the rails, &c., were ready for delivery, but the companies did not provide cars or vessels for the transportation of said materials, and that, by the terms of the contract, such notice was equivalent to a delivery thereof; and that the Rolling Mill Company then and thereby complied with its contract, and was entitled to the consideration therein named.

It also alleged that the Rolling Mill Company had received in part payment of said consideration the sum of $95,000, and no more, and that the purchasing companies had wholly neglected and refused to pay the Rolling Mill Company any further sums of money on the contract, and had neglected and refused to deliver to it any of the notes or securities for deferred payments on the rails, &c., as provided in said contract, although requested to do so; and that thereby the whole amount of the purchase money for the rails, &c., had become due and payable.

It further alleged that on May 10th, 1875, the Rolling Mill Company, within the time prescribed by law, filed its bill in the Circuit Court of Will County, Illinois, for the purpose of enforcing its lien, under the statutes of Illinois, upon the railroad and its appurtenances, and that the bill was still pending and undetermined.

The answer still further alleged that the Rolling Mill Company not only had a statutory lien upon all the materials furnished under said contract, but by the contract it had an express contract lien upon the same, and that, by virtue of the contract and the facts set forth, it had a lien upon the Illinois River Railroad and its appurtenances paramount to the lien of the bondholders under said deed of trust and all other liens upon the road.

On the same day on which its answer was filed the Rolling Mill Company obtained leave to file, and did file, a cross-bill in the cause, setting up the same matters stated in its answer, and praying that upon the final hearing a decree might be entered requiring payment of the amount due to it within a certain

time to be fixed by the decree, and that in default thereof the railroad of the Illinois River Railroad Company and all its appurtenances might be sold, and out of the proceeds its claim might be paid in preference to the bondholders or any other persons.

The answers to the cross-bill of the Rolling Mill Company denied that said company had any lien for the materials furnished by it under said contract, either by virtue of the contract or the statutes of Illinois.

Afterwards, on May 31st, 1876, the master to whom the cause had been referred, filed his report upon the claims of the Rolling Mill Company, with the testimony in support thereof, by which he found due to the complainant in the cross-bill from the Illinois River Railroad Company and the Construction Company, for iron rails, &c., furnished under said contract, with interest, &c., the sum of $186,783.49, and for which he reported the Rolling Mill Company had a lien binding on all the defendants.

On June 27th, 1876, the report of the master was referred back to him by the following order, which was entitled both of the original and the cross-cause:

"By agreement of counsel the report of the master in said bill and cross-bill is referred back to Henry W. Bishop, the master in chancery of this court, with leave for the complainant in said bill and the defendants to take further proofs within eight (8) days from this date, and for the Union Rolling Mill to take further proofs, if desired, within twelve (12) days from this date, said master to report at the expiration of said twelve days."

On July 1st, 1876, Dumont, the complainant in the original bill, filed his supplemental bill, in which he averred that, since the filing of the original bill, coupons attached to the bonds mentioned, falling due on March 1st, 1876, had become due, and remained unpaid, although presented for payment; that he had paid out certain sums for right of way, for laying down side tracks and switches, and for taxes, and prayed that an account might be taken of the sums due on said coupons so fallen due, and of the sums paid out by complainant as aforesaid,

and that the latter might be declared a lien on the mortgaged premises.

On August 3d, 1876, the Illinois River Railroad Company filed its plea to the original and supplemental bills, in which it averred that at the date of the mortgage set forth in the original and supplemental bills, and at the beginning of this suit, the said George Straut, the trustee named in the deed of mortgage, was and ever since had been and still continued to be a citizen of the State of Illinois; that he was such citizen on September 13th, 1875, when he was applied to to foreclose the deed of trust, and on September 13th, 1875, when he resigned said trust; that from and after March 1st, 1875, until the commencement of this suit, all the defendants to the original and supplemental bills had been citizens of the State of Illinois, and had continuously remained such citizens until the filing of the plea. Wherefore, the said company averred that Dumont, as assignee of said chose in action, namely, said deed of trust, had no standing to prosecute the said suit, and set up the facts aforesaid in bar of the jurisdiction of the court.

No other plea, answer, or demurrer was ever filed to the supplemental bill by any of the defendants in the cause, nor was said plea to the original and supplemental bill ever replied to or set down for argument.

On June 26th, 1877, one year after the report first filed by him had been recommitted, the master, after re-examining the former testimony, and taking additional testimony, covering in all several hundred printed pages, and hearing the arguments of counsel, filed his second report, affirming his former findings, and sustaining the allegations of the cross-bill.

On July 16th, 1877, exceptions to this report were filed by Dumont, the complainant in the original bill, the main ground of the exceptions being that the master had erred in reporting that the Rolling Mill Company was entitled to a first lien on the mortgaged premises for the amount found to be due it.

October 15th, 1877, the following order was entered:

"Now come the parties by their solicitors, and thereupon the original, supplemental, and cross-bills were submitted to the court

on printed arguments to be furnished by Messrs. Beckwith and Smith by October 26th inst., by Messrs. Cooper and Packard and Henry Crawford by October 30th inst., by George Campbell by November 20th next, and by Messrs. Beckwith and Smith, in reply by November 30th next."

On the 25th day of May, 1878, the Massachusetts Mutual Life Insurance Company, on leave of court, filed an intervening petition in the cause, stating, among other things, that it was the holder of some of the bonds secured by the trust deed to George Straut, and that the complainant, John B. Dumont, was threatening to foreclose the trust deed under the power of sale contained therein, and prayed for an injunction to prevent such sale, and, in accordance with this prayer, an order was entered in the cause on the 25th of May, 1878, restraining Dumont from selling the property included in the trust deed until the further order of the court.

Afterwards, on January 4th, 1878, by agreement of the parties by their solicitors, an order was entered setting aside the order of October 15th, 1877, submitting the exceptions to the master's report upon printed briefs. June 5th, 1878, the exceptions came up for hearing before the court. The hearing continued until June 11th, 1878, when the exceptions were taken under advisement.

On December 16th, 1878, the court entered an interlocutory decree upon the report of the master and the exceptions thereto. This decree was entitled thus:

" John B. Dumont

vs.

Chicago and Illinois River Railroad Company *et al.* } in Chancery. Original Bill.

and

" Union Rolling Mill Company

vs.

John B. Dumont *et al.* } Cross-bill.

By this interlocutory decree the court found due the Rolling Mill Company $134,733.23 on account of rails and materials

used in the construction of the railroad and not paid for, and that this sum constituted a lien upon the railroad of the Illinois River Railroad Company, and "upon all its property, real, personal and mixed." The court further found that the Rolling Mill Company had delivered to said Illinois River Railroad Company and the Construction Company, iron rails, steel rails, &c., mentioned in the contracts with said Rolling Mill Company to a large amount, which had been sold by the Illinois River Railroad Company and the Construction Company to the Alton Railroad Company, with full knowledge of the lien of said Rolling Mill Company thereon. That the Alton Railroad Company had never specially paid for such material, but had converted the same to its own use, and that such rails and other materials were then of the value of $24,464.92. This sum the court found the Rolling Mill Company was entitled to have and recover from the Illinois River Railroad Company, the Construction Company, and the Alton Railroad Company, together with interest thereon, amounting at the date of the decree to the sum of $29,796.30 ; and the court reserved for further consideration all questions relative to the enforcement of the lien declared for the sum of $134,733.23, and relative to the sum of $29,796.30, found due from the Alton Railroad Company, the Construction Company, and the Illinois River Railroad Company.

Afterwards, on April 15th, 1879, the complainant in the original bill moved for leave to dismiss the same at his own costs, and on September 2d following, the consent of the Massachusetts Mutual Life Insurance Company and other defendants to the dismissal of the original bill was filed in the cause. On March 29th, 1880, John B. Dumont filed his disclaimer to further prosecute said cause, for the reason, as stated by him, that his interest in the same had ceased and terminated by a proceeding had in the Circuit Court of Will county, Illinois. On the same day the court rendered a final decree in the cause, which was entitled both of the original and cross-cause, and which began as follows :

"This day came the several parties to the said cause and cross-cause, by their respective solicitors." The decree then

proceeded to overrule the motion of the complainant Dumont for leave to dismiss the bill, and ordered the payment of the sum of $134,733.23 to the Rolling Mill Company, found due it by the interlocutory decree theretofore entered, with interest, and in default thereof, that all the railroad, with its appurtenances, of the Illinois River Railroad Company be sold free and clear of all encumbrances in favor of any of the parties to the suit; the proceeds to be applied, first, to the payment of costs; second, to the payment of the sum so found due the Rolling Mill Company; and the surplus, if any, to be paid to the clerk of the court. The court further decreed that the Rolling Mill Company have execution against the Alton Railroad Company, the Illinois River Railroad Company, and the Construction Company, for the sum of $29,796.30, together with interest thereon from the 16th day of December, 1878, found due to it by the interlocutory decree theretofore entered.

The Massachusetts Mutual Life Insurance Company, as an intervenor in the cause, on June 10th, 1880, took and perfected an appeal from the said decree, and on the next day Dumont and the Alton Railroad Company appealed from the same decree, the Illinois River Railroad Company, the Construction Company, Hancock and Beckwith having refused to join in said appeal.

By the appeal last mentioned the final decree of the circuit court was brought under review.

*Mr. S. W. Packard* and *Mr. C. Beckwith* for appellants.
*Mr. Lyman Trumbull* for appellee.

MR. JUSTICE WOODS delivered the opinion of the court.

The appellants assign for error—

1. The refusal of the circuit court to dismiss the original bill and the rendition of the final decree in favor of the Rolling Mill Company and the ordering of the sale of the property of the company to satisfy the same.

2. The finding that the Rolling Mill Company had a lien upon the railroad and property of the Illinois River Railroad Company for the amount found to be due it, and that such

lien was paramount to the lien of the bonds secured by the trust deed to Straut.

3. The rendition of a personal decree against the Alton Railroad Company for $29,796.30, and the awarding of execution thereon.

We shall consider these assignments of error in the order in which they are stated.

The appellants contend that Dumont, the original complainant, had the right at any stage of the case to dismiss his bill, and that its dismissal would carry with it the cross-bill, and that having made the motion to dismiss, which was erroneously overruled, all the subsequent proceedings and decrees are erroneous.

It may be conceded that when an original bill is dismissed before final hearing, a cross-bill filed by a defendant falls with it. It may also be conceded that, as a general rule, a complainant in an original bill has the right at any time, upon payment of costs, to dismiss his bill. But this latter rule is subject to a distinct and well settled exception, namely, that after a decree, whether final or interlocutory, has been made, by which the rights of a party defendant have been adjudicated, or such proceedings have been taken as entitle the defendant to a decree, the complainant will not be allowed to dismiss his bill without the consent of the defendant.

The rule is stated as follows in Daniell's Chancery Practice, page 793, 5th Am. Ed. :

"After a decree or decretal order the court will not allow a plaintiff to dismiss his own bill, unless upon consent, for all parties are interested in a decree, and any party may take such steps as he may be advised to have the effect of it."

The same writer, page 794, says, that,

"After a decree has been made, of such a kind that other persons besides the parties on record are interested in the prosecution of it, neither the plaintiff nor defendant, on the consent of the other, can obtain an order for the dismissal of the bill."

The rule, as we have stated it, is sustained by many adjudi-

cated cases. It was laid down by the Lord Chancellor in *Cooper* v. *Lewis*, 2 Phillips Ch. 181, as follows:

"The plaintiff is allowed to dismiss his bill on the assumption that it leaves the defendant in the same position as he would have stood if the suit had not been instituted; it is not so where there has been a proceeding in the cause which has given the defendant a right against the plaintiff."

In *Bank* v. *Rose*, 1 Rich. Eq. (S. C.) 294, it was said:

"But whenever, in the progress of a cause, the defendant entitles himself to a decree, either against a complainant or a co-defendant, and the dismissal would put him to the expense and trouble of bringing a new suit or making new proofs, such dismissal will not be permitted."

So in the case of *Connor* v. *Drake*, 1 Ohio St. 170, the Supreme Court of Ohio, declared:

"The propriety of permitting a complainant to dismiss his bill is a matter within the sound discretion of the court, which discretion is to be exercised with reference to the rights of both parties, as well the defendant as the complainant. After a defendant has been put to trouble in making his defence, if in the progress of the case rights have been manifested that he is entitled to claim, and which are valuable to him, it would be unjust to deprive him of them merely because the complainant might come to the conclusion that it would be for his interests to dismiss his bill. Such a mode of proceeding would be trifling with the court as well as with the rights of defendants. We think the court did not err in its ruling in refusing to permit complainant to dismiss his bill."

Chancellor Walworth in the case of *Wall* v. *Crawford*, 11 Paige, 472, laid down the rule in these words:

"Before any decree or decretal order has been made in a suit in chancery, by which a defendant therein has acquired rights, the complainant is at liberty to dismiss his bill upon payment of costs; but after a decree has been made by which a defendant

has acquired rights, either as against a complainant or against a co-defendant in the suit, the complainant's bill cannot be dismissed without destroying those rights. The complainant in such a case cannot dismiss without the consent of all parties interested in the decree, nor even with such consent, without a rehearing, or upon a special order to be made by the court."

See also *Guilbert* v. *Hawles*, 1 Ch. Cas. 40; *Bluck* v. *Colnaghi*, 9 Sim. Ch. 411; *Lashley* v. *Hogg*, 11-Ves. Jr. 602; *Booth* v. *Leycaster*, 1 Keen's Ch. 255; *Biscoe* v. *Brett*, 2 Vesey & B. 377; *Collins* v. *Greaves*, 5 Hare, 596; *Gregory* v. *Spencer*, 11 Beav. 143; *Carrington* v. *Holly*, 1 Dick. 280; *Anon.*, 11 Ves. Jr. 169; *Cozzens* v. *Sisson*, 5 R. I. 489; *Opdyke* v. *Doyle*, 7 R. I. 461; *The Atlas Bank* v. *The Nahant Bank*, 23 Pick. 491; *Bethia* v. *M'Kay*, Cheve's Eq. (S. C.) 96; *Sayer's Appeal*, 79 Penn. St.; *Seymour* v. *Jerome*, Walk. Mich. Ch. 356.

The authorities cited sustain the refusal of the circuit court to allow Dumont to dismiss his bill. The only really contested issue in the case was between Dumont, representing the bondholders, and the Rolling Mill Company. The answers of all the other defendants simply required proof of the averments of the bill, neither admitting nor denying them. The issue raised by the averments of the original bill and the answer of the Rolling Mill Company, and by the cross-bill of the Rolling Mill Company and the answer of Dumont, the complainant in the original bill, was whether the Rolling Mill Company had a lien upon the road and property of the Illinois River Railroad Company, and whether such lien was superior to that of the trust deed executed to Straut, which the original bill was filed to foreclose. The issues thus raised involved the rights of all the parties to the suit. This issue was referred to a master to take testimony and report. He filed a report which was entitled both of the original and cross-cause. The record shows that, " by agreement of counsel, the report of the master in said bill and cross-bill was referred back to him," with leave to the parties to take further proofs; that after taking a large mass of additional evidence, covering several hundred printed pages, the master reported that the Rolling Mill Company had a statutory lien

upon the property covered by the trust deed executed to Straut, and that the same was consequently the first lien upon the property. Joint exceptions were filed to this report by Dumont, the original complainant, and the Alton Railroad Company and the Illinois River Railroad Company, all of which were entitled both of the original and cross-cause. After full argument, the court overruled the exceptions and rendered an interlocutory decree in both the original and cross-cause, establishing the lien of the Rolling Mill Company as claimed in its answer to the original bill and in its cross-bill. After all these proceedings, and when the controversy between the parties was practically ended by the interlocutory decree of the court, the motion to dismiss his original bill was made by Dumont, the complainant therein. The Rolling Mill Company insisted that if the original bill, carrying with it the cross-bill, were dismissed, its claim would be barred by the statute of limitations. It would be hard to conceive of a clearer case for the application of the rule laid down by the authorities we have cited. If the court under these circumstances, had allowed the original bill to be dismissed without the consent of the Rolling Mill Company, it would have inflicted a palpable wrong on that company, and trifled with the administration of justice.

The fact that the Rolling Mill Company had been compelled to file a cross-bill in order to secure complete relief, only strengthens the case against the dismissal of the original bill. Several of the authorities cited to show that an original bill cannot be dismissed after decree, apply to cases where a cross-bill has been filed. *Bank* v. *Rose*, 1 Rich., and *Watt* v. *Crawford*, 11 Paige, *ubi supra*.

But counsel for appellants insist on the right of Dumont to dismiss his original bill, because a supplemental bill had been filed, to which, as well as to the original bill, the Illinois River Railroad Company had filed a plea denying the jurisdiction of the court ; that the truth and sufficiency of this plea were admitted by the complainant, because he failed to reply thereto, or set it down for argument by the next succeeding rule day, or to obtain further time for that purpose from the court ; and

that therefore, under the 38th equity rule, the bill should have been dismissed " as of course" by the court.

It is to be observed that the plea referred to was filed by the Illinois River Railroad Company, which is not a party to this appeal, and which never asked the dismissal of the original bill, because its plea had not been put at issue or set down for argument. Under these circumstances it would be a strange application of the 38th rule to hold that the complainant had the right to dismiss his bill after the cause had been decided against him.

It plainly appears from the record that after such plea was filed by the Illinois Railroad Company no notice was taken of it by any of the parties, the cause was allowed to proceed as if it had never been filed, and was decided upon the issues raised by the answer and cross-bill of the Rolling Mill Company. The complainant now insists that his bill should have been dismissed, carrying with it the decree of the court in favor of the Rolling Mill Company, the cross-bill, and the issues raised upon it, and the great mass of testimony in the case, in the taking of which he had participated, because of his own neglect to reply to a plea filed by another party, which itself never insisted upon the dismissal of the bill by reason of that neglect. The only party which could assign for error the refusal of the court to dismiss the bill on account of the default of the original complainant in not replying to or setting down the plea, is the Illinois River Railroad Company, by which the plea was filed. But it has never taken any exception to the refusal of the court to dismiss the bill, and is not a party to this appeal. For the reasons stated we think the circuit court did right in overruling the application of Dumont for leave to dismiss his bill.

It is next insisted that the court erred in entering a final decree in favor of the Rolling Mill Company and ordering a sale of the property of the railroad company to satisfy the same.

The ground of this contention is that the final decree was rendered upon the cross-bill only, and not upon the original bill, and that if the cross-bill only were considered the court had no jurisdiction thereof by reason of want of the requisite citizenship of the parties thereto, and that no decree could be ren-

dered upon the cross-bill, except as consequent upon a decree in the original cause. This objection proceeds upon an assumption not sustained by the record. The cause was heard at the same time upon both the original and cross-bills. The issue was whether or not the lien of the Rolling Mill Company was prior to the bonds secured by the deed of trust. This was raised both by the original and cross-bills. The prayer of the original bill was that an account might be taken of the sums due for principal and interest on the bonds secured by the trust deed to Straut, and of the sums due as liens upon the railroad, and that it might be sold for the payment of the same. The issues raised by the original bill and the answer of the Rolling Mill Company, and upon the cross-bill of the Rolling Mill Company, were found by the court in favor of the company upon a hearing of both the original and cross-bills. The court decided in favor of the Rolling Mill Company, granting it the relief prayed in its cross-bill. It is true the complainant, in his original bill, did not ask for a decree upon the final hearing in his favor. But the cause having been heard on both the original and cross-bills, he could not prevent the granting of the relief prayed by the cross-bill, either by dismissing his bill or by not asking for a decree.

The original bill was not dismissed, but is still pending, and the complainant in that bill may still apply in behalf of the holders of bonds secured by the trust deed to Straut for such part of the proceeds of the sale as the final decree orders to be paid to the clerk of the court. Our conclusion is, therefore, that it was competent for the court to render the final decree made in this case.

The next question presented by the assignments of error is whether the Rolling Mill Company had a lien upon the railroad and other property of the Illinois River Railroad Company superior to the deed of trust to Straut and the lease to the Alton Railroad Company.

The matter of liens upon railroads is regulated by the Revised Statutes of Illinois, chapter 82, sec. 51, in force when the contract of August 7th, 1874, for the delivery of iron rails was made, and on March 1st, 1875, when the trust deed to Straut was executed, which declares:

"That all persons who may have furnished, or who shall here-after furnish, to any railroad corporation now existing, or hereafter to be organized under the laws of this State, any fuel, ties, materials, supplies, or any other article or thing necessary for the construction, maintenance, operation or repair of such roads, by contract with said corporation, or who shall have done and performed, or shall hereafter do and perform, any work or labor for such construction, maintenance, operation or repair by like contract, shall be entitled to be paid for the same as part of the current expenses of said road ; and in order to secure the same shall have a lien upon all the property, real, personal and mixed, of said railroad corporation as against such railroad, and as against all mortgages or other liens which shall accrue after the commencement of the delivery of said articles, or the commencement of said work or labor, Provided suit shall be commenced within six months after such contractor or laborer shall have completed his contract with said railroad corporation, or after such labor shall have been performed or material furnished."

The Rolling Mill Company began to deliver to the Illinois River Railroad Company on September 1st, 1874, iron rails and other material to be used in the construction of its road, and continued such delivery until November 11th, 1874. The material so furnished, of the value of $107,785.09, was used in the construction of the railroad. Within less than six months from November 12th, 1874, the date when the last material was delivered, the Rolling Mill Company filed in the proper court its bill of complaint to enforce its lien under said statute. The lease of its road made by the Illinois River Railroad Company to the Alton Railroad Company, and its deed of trust to George Straut were not executed until March 1st, 1875, long after the delivery of said material had been commenced. The lien of the Rolling Mill Company under the statute would therefore seem to be complete and superior to that of the trust deed and lease.

The appellants, however, contend that the Rolling Mill Company waived its lien by the contract between it and the Construction Company and the Alton Railroad Company of August 7th, 1874, by which it was stipulated that the rails and other materials furnished by the Rolling Mill Company should be used

in the construction of the railroad of the Illinois River Railroad Company, and that until fully paid for the Rolling Mill Company should have a lien thereon, and that the possession thereof by the railroad company should be the possession of the Rolling Mill Company.

We do not think that this stipulation shows any purpose on the part of the Rolling Mill Company to waive its statutory lien. When the contract was made, the railroad for which the materials were to be furnished was in contemplation only. The survey of its route had not been completed, nor had the right of way been obtained. The evident purpose of the stipulation was to secure a specific lien on the materials furnished, and to require them to be used in the construction of the railroad where they would be subject to the statutory lien, and the facts of this case show that this was a wise precaution. The contract, therefore, so far from showing a waiver of the statutory lien, shows a purpose on the part of the Rolling Mill Company to retain it. The statutory lien was, therefore, not lost. On this question the case of *Clark* v. *Moore*, 64 Ill. 279, is in point. In that case the Supreme Court of Illinois says:

"It is also insisted that appellees waived their lien when they sold the property, by reserving a lien upon it in a written contract; that they thereby received and held additional security, that operated to destroy any lien that would otherwise have attached. It is true that where a laborer or materialman receives security collateral to the property improved, whether the security be personal or a mortgage on or a pledge of other property or chose in action, the law presumes that it was intended to waive or release the lien upon the premises. In their effort to retain a lien on the machinery furnished by appellees, they took no collateral or independent security. It was but a futile effort to retain a superior lien on the property furnished over and above other lienholders. Had these parties taken a mortgage on these lots and the building, which the law would have adjudged void, would any one claim that they could not assert their lien? The lien attaches to and encumbers the property to improve which the material is furnished, and the effort to acquire a more specific and exclusive lien thereon in no wise manifests an intention to release the property from all

liens and look to other security for payment, but it shows the very opposite intention, an intention to hold, if possible, the property liable for the payment of their claim."

This authority decides the question in hand against the appellants, and is entitled to great, if not conclusive, weight in this court.

The appellants further contend that the Rolling Mill Company, by the contract of August 7th, 1874, gave credit for the materials to be purchased by it, which extended beyond the time within which suit would have to be brought to fix and enforce the statutory lien, and that this fact shows conclusively that the statutory lien was waived.

It is well settled that an agreement for the extension of credit by receiving a note of the party, or the independent security of a third person, falling due at a day beyond the period within which the lien must be asserted, will be no waiver when the agreement to give the note or security has not been performed by the promisor. To hold otherwise would be to say that the builder or materialman must have intended to waive his lien in the event of a refusal to comply with the agreement. On the debtor's refusal to keep the agreement, the builder or materialman ought not to be bound by it, but should be remitted to his rights, independently of the contract. *The Highlander*, 4 Blatch. 55.

It is clear from the terms of the contract that the Rolling Mill Company never agreed to extend credit for the materials furnished unless notes were given therefor, with the stockholders of the Construction Company as indorsers, and with the bonds of the Construction Company secured by the deed of trust to Norton as collateral security. The contract to give credit was clearly conditioned upon the delivery of the notes and bonds. It would be absurd to hold that, on the failure to deliver them, the Rolling Mill Company had nothing to show for its iron rails and other materials, but the promise of an insolvent railroad company and an insolvent construction company to deliver the notes and bonds. They were as impotent to deliver the notes and bonds as they were to

pay cash. Such could not have been the intention of the parties to the contract. On the failure of the companies to deliver the notes and bonds according to the contract, the Rolling Mill Company was entitled to immediate payment and to its statutory lien to secure it, because the credit was conditioned upon the giving of security, and the security was not given. It has been so held by the Supreme Court of Illinois in the case of *Gardner* v. *Hall*, 29 Ill. 277. Gardner filed his petition to enforce a mechanics' lien on a contract for doing certain work. The contract provided that payment of a certain instalment due upon a day named should be postponed for a period extending more than a year after the completion of the work in case a mortgage on the premises should be given to secure said instalment. The petition was demurred to, and the demurrer was sustained. On appeal this decree was reversed, and the supreme court said:

" An agreement was made to give a mortgage which would have destroyed the lien, but no mortgage was given, and hence the lien remained. So was an agreement made to extend the time of payment which would destroy the lien. But the mortgage was not executed, hence the time was never extended and the lien never waived thereby." See also *The Highlander*, 4 Blatchf. *ubi supra.*

We are of opinion, therefore, that as the purchasing companies did not perform the condition upon which credit was to be given, no credit at all was given, much less a credit extending beyond the time for the enforcement of the statutory lien.

It follows from these views that the contention of appellant that the suit begun May 10th, 1875, by the Rolling Mill Company to fix and foreclose its statutory lien, was brought before the cause of action accrued, and cannot, therefore, be treated as a compliance with the statute, cannot be sustained, for at that date the debt was due and the lien in force.

In our opinion the Rolling Mill Company had, under the statutes of Illinois, a lien upon the railroad and its appurtenances of the Illinois River Railroad Company for the value of the materials furnished by it and used in the construction of

the railroad, superior to the lien of the trust deed executed to George Straut on March 1st, 1875, and to the lease of said railroad executed on the same day to the Chicago & Alton Railroad Company, and that the decree of the circuit court ordering the railroad to be sold to pay the sum due for said materials so used was just and right.

It is, lastly, assigned for error, that the circuit court rendered a personal decree against the Alton Railroad Company in favor of the Rolling Mill Company, and awarded execution thereon.

The personal decree complained of was for $29,796.30. This sum was the value, with interest, of certain iron rails, &c., sold and delivered by the Rolling Mill Company to the Illinois River Railroad Company and the Construction Company, under the contract of August 7th, 1874, which were not used in the construction of the railroad, but were sold by the purchasing companies to the Alton Railroad Company, and by it converted to its own use.

The circuit court found that the Rolling Mill Company had a lien upon said materials; that the Alton Railroad Company bought said materials with notice thereof, and had never paid for the same, and had alleged, as a reason for its failure to pay, the want of title in the companies from which it purchased. The facts so found are clearly shown by the record, and do not seem to be disputed. The Alton Railroad Company, however, insists that there was no lien on said materials under the contract of August 7th, 1874, because the contract was not acknowledged and recorded as required by the law of Illinois relating to chattel mortgages.

That act provided as follows:

"That no mortgage, trust deed, or other conveyance of personal property, having the effect of a mortgage or lien upon such property, shall be valid as against the rights and interests of any third person, unless possession thereof shall be delivered to and remain with the grantee, or the instrument shall provide for the possession of the property to remain with the grantor, and the instrument is acknowledged and recorded as hereinafter directed; and every such instrument shall, for the purposes of this act, be

deemed a chattel mortgage." Rev. Stat. of Ill., chap. 95, section 1.

The theory of the appellants is that the Illinois River Railroad Company and the Construction Company, being the owners by purchase of the iron rails, retained possession of the same, and by the contract of August 7th, 1874, gave to the Rolling Mill Company a chattel mortgage thereon, which was never acknowledged and recorded, and that consequently the lien fails. But the facts of the case are not in accord with this theory. When the contract referred to was made the iron rails were not the property of the purchasing companies. It does not appear that the rails were at that time in existence, and they were certainly not in possession of the purchasing companies. So that this is not the case contemplated by the Illinois statute, which clearly refers to a mortgage on personal property of which the mortgagor is owner and of which he is in possession and of which he wishes to retain possession. The case is that of the owner, namely, the Rolling Mill Company, of personal property, who sells it and delivers the physical possession to its vendee and by the bill of sale retains a contract lien thereon. In such a case it is clear that the original vendor can enforce the lien against a subsequent purchaser who had actual notice of the lien and had not paid for the property, and refused to pay for it on the ground that the first vendee from whom he bought had no title thereto. The chattel mortgage law above quoted can have no reference to such a case. Such an application of it would be unjust, inequitable, and unreasonable. The law has never been so applied by the courts of Illinois.

We find no error in the proceedings and decrees of the circuit court. They are, therefore,                    *Affirmed.*

Case No. 172. *The Massachusetts Mutual Life Insurance Company* v. *The Union Rolling Mill Company* is an appeal from the same decree affirmed in the preceding case.

The Insurance Company by leave filed an intervening petition, claiming to be the owner of forty-five of the bonds secured by the trust deed to George Straut. It has never proved its posses-

sion or ownership of any of said bonds either before the master or the court. If it had it would be in the same position as any other holder of said bonds, all of whom, so far as the questions raised by this appeal are concerned, were represented by Dumont, the complainant in the original bill. These questions have all been decided in the preceding case.

In this case also the decree appealed from must therefore be

*Affirmed.*