### THE OLYMPIA.
### No. 3453.

District Court, D. Connecticut.
April 28, 1932.

John Buckley, U. S. Atty., and George H. Cohen, Asst. U. S. Atty., both of Hartford, Conn.

Willard M. Harris, of Philadelphia, Pa., for Rancocas Const. Co.

Loren W. Willis, of Bridgeport, Conn., for Wolverine Motor Works, Inc.

Nathan Belcher, of New London, Conn., for Franklin G. Post and George W. Wilcox.

Morris Lubchansky, of New London, Conn., for Nathaniel H. Avery.

HINCKS, District Judge.

This matter comes before the court on a libel of the government, alleging that the Olympia, duly enrolled and licensed for coastwise trade, did on October 22, 1931, make contact with a British vessel twenty-five miles off Block Island, receiving therefrom a cargo of intoxicating liquors. On October 22, 1931, the said vessel was seized, and has since been held under authority of the collector of customs for this district. The government seeks a forfeiture under the provisions of section 4337 of the Revised Statutes of the United States (46 USCA § 278) on these facts. And for additional causes of forfeiture also suitably alleges violation of

section 4377 of the Revised Statutes (46 USCA § 325) and also violation of the Navigation Act of June 9, 1910 (46 USCA § 511 et seq.).

After the seizure, and while the vessel was in fact in the custody of the collector of customs, doubtless awaiting the institution of forfeiture proceedings by the government, one Avery filed a libel to establish a claimed maritime lien for supplies. Monition issued, and the marshal made return that he "libeled" the vessel "by placing a libel upon said vessel" by newspaper advertisement of the libel, and posting a copy on the billboard in the Federal building, New Haven, and that "he appointed a keeper thereof." To this libel, one Post and one Wilcox each filed a petition of intervention; each claiming a maritime lien.

Thereafter the government filed the libel herein, to which the Rancocas Construction Company and the Wolverine Motor Works, Inc., filed intervening petitions. The marshal made return to the monition herein that he "seized" the vessel, etc.

Thereafter the government filed a petition of intervention in the Avery libel, praying also for an order consolidating the Avery libel and its intervening libels with the libel herein, and that all libelants, including the intervening libelants in both libels, be given the status of claimants herein. This order was granted and the consolidation thus accomplished.

At the hearing, all parties of record have stipulated that: "The Oil Screw 'Olympia' is a boat that was documented for coastwise fishing—and that she was documented in Philadelphia; that on the 22nd day of October, she was seized at a point on the high seas about twenty-five miles from land; that she had on board forty-six sacks of intoxicating liquor; that she did not prior to going on this journey give up her enrollment or license, or procure a certificate of registry from the Collector of the District, comprehending the port from which she proceeded; that after she was seized by the Coast Guard she was turned over to the Customs officials and thereafter was libelled as appears from the docket of the Court."

The government for a cause of forfeiture, relies upon Revised Statutes, § 4377 (46 USCA § 325), which provides that a vessel engaging in a trade other than that for which she was licensed shall be forfeited. On the stipulated facts, it is apparent that the government, subject only to such rights as may be found in the claimants, is entitled to forfeiture on this ground.

The only contested question is whether or not the claimants have rights in the vessel which survive the forfeiture.

It will, I think, facilitate an understanding of the situation if the several claims are stated and discussed one by one.

First, we have the claim of the Rancocas Construction Company.

■ The evidence discloses that this claimant, hereafter referred to as "Rancocas," was the builder of the Olympia in its shipyard in New Jersey. The purchasers were three fishermen residing in Connecticut. A conditional bill of sale was duly executed between the parties under date of January 22, 1929, by the terms of which legal title was reserved to Rancocas until the payment of the purchase price should be completed in accordance with its terms and giving Rancocas right to repossess the same upon any default on the part of the purchasers. Thereafter default was made on installment payments required under the conditional contract, and the defaults thus arising continued until the vessel was actually seized by the government as set forth above.

This claimant was at all times wholly without any participation in the violation of any laws of the United States, and had no knowledge or suspicion that those in control of the vessel were putting it to any unlawful use. At the hearing, Rancocas expressly disclaimed any maritime lien, and rested upon the broad claim that its status as owner, without knowledge of the illegal use of the vessel, is a complete defense against the forfeiture. This claim, however, cannot be sustained, and is overruled on the authority of the case of The Pilot (C. C. A.) 43 F.(2d) 491, and the cases there cited.

■ But the claimant, by the amendment to its petition of intervention herein, further prays that this court, if it shall decree a forfeiture, shall remit the same and shall also make a finding of the facts involved in section 618 of the Tariff Act of 1930 (19 USCA § 1618), annex its finding to the claimant's petition herein, and transmit the same to the Secretary of Commerce.

The statute which claimant thus invokes provides that one interested in a vessel forfeited under the provisions of this chapter (chapter 497, Act of June 17, 1930, 46 Stat. 757 [19 USCA § 1001 et seq.]) may file a petition with the Secretary of Commerce for

the "remission or mitigation" of the forfeiture, and that the Secretary, "if he finds" an absence of negligence or wrongful intent in the petitioner "or such mitigating circumstances as to justify" remission or mitigation of the forfeiture, may remit or mitigate the same "upon such terms and conditions as he deems reasonable and just."

A reading of this section discloses no basis for the claimant's prayer that the court should thrust its own finding upon the Secretary of Commerce, and the claim is noticed only because of argument that, under the holding in the recent decision of the Supreme Court in Crowell v. Benson (February 23, 1932) 52 S. Ct. 285, 76 L. Ed. ——, the claimant is entitled to a judicial determination of the facts involved.

But the argument wholly overlooks the obvious distinction between matters of right and of grace. Thus a decree of forfeiture entered by the court, after notice and full hearing, is a judicial determination that the claimant has no right in the res. The claimant has had his day in court, and has had the only judicial determination of his rights in the res to which he is entitled. The statute which is now invoked merely confers a discretionary power upon the executive to remit or mitigate a forfeiture already judicially established. Its effect is no part of the controversy at bar, and necessarily the court will not meddle in its application.

It results that the claimant, Rancocas, has no rights which survive the forfeiture on the libel of the government, and that the claimant is not entitled to the relief prayed for in its petition of intervention or the amendment thereof.

Claim of the Wolverine Motor Works, Inc.

 This claimant, hereinafter called Wolverine, in February, 1931, at the request of the owners, sold and installed a new engine in the Olympia, taking the old engine, then considerably the worse for wear, as part payment. The price of the new engine, less the credit for the old engine, was $5,960, which by an initial payment of $1,500, and by further small payments made prior to the seizure, had been reduced to the principal sum of $3,980 at the date of the hearing.

Both from the direct testimony and by inference from the surrounding circumstances I find that this claimant at no time had knowledge of the illegal use of the vessel which resulted in its seizure. Moreover, the evidence failed to establish that the engine was furnished solely on the credit of the owner, as distinguished from the credit of the boat. There was some evidence, however, tending to show that Wolverine, by taking a conditional bill of sale on the engine, had waived a maritime lien, under the doctrine of Marshall & Co. v. "President Arthur," 279 U. S. 564, 49 S. Ct. 420, 73 L. Ed. 846. But I incline to the view that the facts in this case are distinguishable from those involved in the "President Arthur," and come rather within the ruling of such cases as Ricou & Sons Co. v. Fairbanks, Morse & Co., (C. C. A.) 11 F.(2d) 103; The Pearl (D. C.) 189 F. 542; The A. S. Sherman (D. C.) 51 F.(2d) 783. Also C. & A. R. R. Co. v. Union Rolling Mill Co., 109 U. S. 702, 3 S. Ct. 594, 27 L. Ed. 1081. However that may be, a detailed recital of the facts bearing on the issue of waiver is unnecessary, since my decision as to this claim is based on another ground.

There is in evidence correspondence between Rancocas and Wolverine showing conclusively that, long before Wolverine installed the engine, it knew that Rancocas had a conditional bill of sale upon the vessel. Notwithstanding, Wolverine wholly failed to inquire of Rancocas as to the terms of this contract. If it had done so, as it easily could, it would have learned that the contract contained a provision forbidding maritime liens, and that the conditional purchasers in possession of the vessel, who ordered the engine from Wolverine, were thus without authority to pledge the credit of the boat. And a copy of the conditional bill of sale was carried on the boat, which doubtless would have been disclosed upon demand. The conclusion is unavoidable that reasonable diligence on the part of Wolverine would have disclosed this lack of authority.

Wolverine's petition of intervention herein sets up the contract of conditional sale, the purchasers' default thereunder, and the absence of all guilty knowledge on the part of Wolverine, and claimed a maritime lien on the vessel. Thereafter Wolverine filed a petition for the appraisal of the engine installed under the contract of conditional sale, which petition was allowed. Thereafter, in its answer to the libel of the government, Wolverine described itself as "claimant of the engine" only, and prayed possession of the engine only. But, by amendment to its answer filed during the trial, the United States objecting but not claiming surprise, the claimant alleged that the new engine which it furnished replaced a worn-out engine in

an old boat, and expressly claimed a maritime lien and a remission of any forfeiture which might be found.

This claimant, therefore, claims, both as an innocent conditional vendor (its claim as such being confined to the engine) and as a maritime lienor (its claim as such extending to the entire vessel).

It is not necessary to consider both claims. For, if Wolverine is treated as an owner of the engine under its conditional contract, as against the government it is in precisely the same position as Rancocas, and its claim must be disallowed upon the authority of The Pilot, supra. If it has any rights superior to the government, they must flow from a maritime lien, for such a lien, once attaching, in the absence of guilty knowledge in the lienor, will survive even forfeiture by the government. The Thomaston (D. C.) 26 F.(2d) 279; The Ermis (D. C.) 33 F.(2d) 763.

Upon my finding, it appears that Wolverine was a "person furnishing repairs (New Bedford Dry Dock Co. v. Purdy, 258 U. S. 96, 42 S. Ct. 243, 66 L. Ed. 482) to a vessel" within the meaning of section 30, subsec. P, of the Merchant Marine Act of 1920, Act of June 5, 1920, c. 250, 41 Stat. 1008 (46 USCA § 971). But this same subsection provides that a maritime lien shall attach only when the repairs are made "upon the order of the owner of such vessel, or of a person authorized by the owner." And this limitation is further qualified by the two following subsections of the statute. Thus in subsection R (46 USCA § 973) it is provided: " * * * But nothing in this chapter shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

Under this statute, it is authoritatively established that no lien at all arises in favor of one furnishing repairs and supplies to a chartered vessel at the request of the charterer, where reasonable investigation would have disclosed that there was a charter which forbade such liens. U. S. v. Carver 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361; The Roseway (C. C. A.) 34 F.(2d) 131; The Capitaine Faure (D. C.) 5 F.(2d) 1008; Id. (C. C. A.) 5 F.(2d) 1009; The Anna E. Morse (C. C. A.) 286 F. 794; Frey & Son v. U. S. (C. C. A.) 1 F.(2d) 963.

It is impossible to find any basis for distinction between the rights of one furnishing to a charterer and one furnishing to a conditional vendee of the vessel. Indeed, the cases fully indicate that the rule applies where the repairs are ordered by a conditional vendee in possession. North Coast Stevedoring Co. v. U. S. (C. C. A.) 17 F.(2d) 874; U. S. v. Robins Dry Dock Co. (C. C. A.) 13 F.(2d) 808; The S. W. Somers (D. C.) 22 F.(2d) 448; Morse Dry Dock Co. v. U. S. (D. C.) 298 F. 153; Id. (C. C. A.) 1 F.(2d) 233, certiorari denied 266 U. S. 620, 45 S. Ct. 99, 69 L. Ed. 472.

I have noticed that, in the cases cited, the controversy was between the owner or conditional vendor and the lien claimant. Here the claim of the conditional vendor has been disallowed, so that the controversy becomes one between the lien claimant and the government, whose rights, though of plenary proportions, did not attach until after it is claimed the lien of Wolverine accrued. Does this difference in the situation require a ruling other than that indicated by the cases cited above?

The precise point was not argued, and I find no authorities on this aspect of the situation. But it is evident that, if this claimant is to derive any comfort from the elimination of Rancocas as a contesting claimant, it must be on the theory that, by the repairs furnished, it acquired rights of lien which, though subordinate to Rancocas (on the authority of the cases cited), yet are superior to rights thereafter acquired by others (including the government).

As to this, it may be observed that the portion of the statute quoted above suggests the answer. "Nothing in this chapter shall be construed to *confer a lien*, when the furnisher knew," etc. Clearly this indicates a complete absence of lien when actual or constructive knowledge of the lack of authority exists. And the language of the cases, if not their facts, indicates that such knowledge prevents any sort of right by way of lien from coming into existence. Indeed, such a conclusion seems to be required by the fundamental concept of a right in rem. For if, as against the owner, the materialman has no lien, it is because he has no right in the res. Without such a right he is wholly lacking in the foundation for a maritime lien, and it matters nothing against whom his unsupported claim of lien is directed.

And so this claim also is disallowed.

### Claim of Nathaniel H. Avery.

This claimant has for years been in the fish and lobster business at Stonington, Conn., and has made it a part of his business to supply fishing vessels with fuel, ice and supplies. On the evidence I find that every few days from February 24, 1930, to August 10, 1931, he furnished to the Olympia fuel, ice, lubricants, and other supplies at the request of one of the conditional purchasers of the boat. This material was all delivered to the vessel and furnished on the credit of the vessel, and was all necessary for the fishing operations of the vessel. Credits were made on the account from time to time, and there is due and owing a balance of $2,411.84.

The claimant admitted that he knew that Rancocas had an interest in the vessel, and that the sale was on credit. Yet he testified that he never made inquiry of the vendee in possession, on whose order he furnished supplies, whether he had a right "to make maritime liens against this boat"; that he made no inquiry of the collector of customs, where he knew the boat must be enrolled, as to ownership; and that he never saw a copy of the conditional bill of sale or asked to see a copy. Yet he admitted that on several occasions he acted as forwarding agent for the conditional vendees in the remittance of purchase-money payments to Rancocas, which otherwise would have been applicable upon his own open account. He also testified that he accompanied the conditional vendee during the initial negotiations with Wolverine for the purchase of the engine, and himself advanced $500 as the initial payment.

The conditional vendee testified that he carried a copy of the conditional sales agreement on board the boat.

On these facts no conclusion is possible other than that the claimant failed to exercise reasonable diligence in ascertaining the authority of the conditional vendee in possession to pledge the credit of the boat.

And this conclusion makes it unnecessary to make a finding on the knowledge of the claimant as to the illegal use of the vessel.

On the authority of the cases cited in my discussion of the claim of the Wolverine, this claim also is disallowed.

### Claims of Post and of Wilcox.

We come lastly to the claims of Franklin G. Post and George W. Wilcox. The evidence discloses that each of these claimants furnished supplies and repairs to the Olympia on the credit of the vessel at the request of one of the conditional purchasers, who was the master in charge. The material was all delivered to the vessel, and was necessary for its operation. The Post claim shows labor and material, without interest, in the amount of $376.36. The Wilcox claim shows material in the amount of $61.37.

I find that these claimants, on inquiry of the conditional vendee in possession, were informed that he was the owner. There was testimony that an agent of Rancocas, early in November, 1929, in casual conversation with the claimant Post, had informed him of the existence and terms of the conditional contract on the Olympia. But testimony of casual conversations over two years past is evidence of doubtful weight. And, even if true, it does not necessarily establish knowledge on the part of Post some five months later when the vessel was first brought into his yard for repairs. And in other respects the record is wholly devoid of circumstances which would require Post, or Wilcox either, to extend their inquiry as to the master's authority.

Nor did the recording of the conditional bill of sale of either Rancocas or of Wolverine with the Groton town clerk serve as constructive notice to these claimants under the provisions of section 4697 of the General Statutes of Connecticut, Edition 1930. For the effect the state statute had upon the subject-matter has been superseded by the Merchant Marine Act, 1920 (41 Stat. 988). The Gold Digger (D. C.) 44 F.(2d) 660.

Accordingly I hold that these claims are valid liens in the amounts above stated, which, under the authority of The Thomaston, supra, and The Ermis, supra, survive the forfeiture of the government, and each claimant is entitled to satisfaction out of the proceeds of sale.

The claimant Post claims interest. But the facts preclude an allowance for interest prior to his intervention in this libel. The Thomaston, supra; The Snetind (D. C.) 276 F. 139. Interest, however, may be added from January 29, 1932, on which date Post was admitted as a claimant herein by order of court.

The government has contended that all of the claims herein are barred by laches. The facts, however, do not support this contention, and it is overruled.

The government further claims that Avery and these claimants, who intervened in his prior libel, are without remedy because the collector of customs was not made a party thereto. In support of this contention, the government cites The Whippoorwill (D. C.)

52 F.(2d) 985. But this case decides only that the admiralty court at the suit of a lien claimant is without jurisdiction to attach a vessel in the possession of the collector without making the collector a party in his individual capacity under the claim that his possession was tortiously acquired. It follows that such an attachment, being without the jurisdiction of the admiralty court, is ineffective as the foundation for a decree of sale.

On this authority, if we now had under consideration only the Avery libel and the claims of liens there interposed, we should be constrained to rule that the proceedings were defective.

But, when the government by its independent libel in these proceedings brings the vessel into the custody of the court, unquestionably the jurisdiction of admiralty attached, and, having attached, on fundamental principles it was within its power to bring into these proceedings all parties claiming an interest in the res to adjudicate their claims. That the government itself prayed for the admission of these claimants in this libel adds nothing to our jurisdiction. That the earlier proceedings in which these claimants participated may have been without jurisdiction detracts nothing from the jurisdiction of admiralty in these proceedings.

What has been said above also makes it unnecessary to consider the other causes of forfeiture upon which the government has based its libel.

It results that, subject to the claims of Post and Wilcox, the prayer of the government must be allowed. A decree of forfeiture may be entered accordingly, providing for a sale of the vessel and the payment of the claims allowed out of the proceeds thereof.