CELIA SALISBURY and Others, as Administrators, etc., of HENRY O. SALISBURY, Deceased, Respondents, *v.* BINGHAMTON PUBLISHING COMPANY, Appellant, Impleaded with Others.

85    99
85   615
85   616

*Discontinuance of an action — not an absolute right — action by a creditor of a corporation on behalf of himself and others may be discontinued before, not after, decree · form of the final judgment therein.*

The right of a plaintiff to discontinue an action is not absolute and unqualified. Whether an order of discontinuance shall be allowed before a judgment is entered ordinarily rests in the discretion of the court in which such order is sought

Where a creditor files a bill in behalf of himself and all others who shall come in and prove their debts under the decree and contribute to the expenses of the suit, he may discontinue his suit at any time before there has been a decree entered therein for the benefit of himself and the other creditors, but after the entry of a decree he cannot deprive the other persons of the same class, of the benefit of the decree if they think fit to prosecute the suit.

An action brought by a creditor of a corporation against the stockholders thereof was referred to a referee to hear and determine the same. The referee thereafter rendered his report and an interlocutory judgment was entered by order of the Special Term, which, among other things, provided for a further reference, and, declaring the rights of several defendants as between themselves, provided for the costs of the action, and contained a contingent provision for the payment of any extra allowance that might be made in the final judgment. It also provided for the collection from sundry defendants of amounts to be paid into court, from which fund it directed that the costs of the action be paid to the plaintiff's attorneys and to the attorneys for the other parties to whom costs might be adjudged, and, also, such other and further costs and expenses as the court might allow and direct to be paid therefrom, and that the residue of said fund be paid to such person or persons, in such sums, as the court should direct by the final judgment.

It also contained a provision that certain enumerated creditors "are required to exhibit and prove their claims and thereby make themselves parties to this action before the referee herein, * * * on contributing and paying to plaintiffs' attorneys their respective proportions of the expenses of this action to be then settled by the said referee, and, in default thereof, said creditors who are in default are to be precluded from all benefit of this judgment and from any distribution thereunder which shall be made, but claims of creditors which have already been proved before the referee are not required to be again proved." Over and beyond such provisions the decree declared liabilities and rights of sundry parties, in appropriate language, mentioned therein.

*Held,* that upon an application for a final judgment based upon the interlocutory judgment and the referee's report, the final judgment might properly provide

for the distribution of the funds and for the adjustment of the rights and liabilities of the several parties, and the proper allowances to be made in accordance with the tenor of the interlocutory judgment and the rules and practice existing in such cases.

APPEAL by the defendant, the Binghamton Publishing Company, from an order of the Supreme Court, made at the Onondaga Special Term and entered in the office of the clerk of the county of Onondaga on the 24th day of September, 1894, confirming the report of a referee, denying a motion made by the appellant and certain other defendants for the appointment of a new referee and granting the plaintiffs' motion for leave to discontinue the action, unless any creditors of the Binghamton Hydraulic Power Company, who might desire to further prosecute the action, should pay to the plaintiffs' attorneys a certain specified amount, in which event the person so paying the same should be substituted as the plaintiff in the action, with leave to continue the same.

*T. B. & L. M. Merchant,* for the appellant.

*Gill & Stilwell,* for the respondents.

HARDIN, P. J. :

Although the appeal book before us does not contain the complaint, answer or the report of the referee upon which the interlocutory judgment was entered, we discover from the appeal papers before us that an action was brought by the plaintiffs' intestate, as a creditor of the Binghamton Hydraulic Power Company, against the stockholders of said company. A preliminary injunction was obtained and that was sustained. The action seems to have been commenced and conducted upon the principles laid down in *Pfohl v. Simpson* (74 N. Y. 137). After the issues were joined there was a reference to the late Judge EDWARDS as sole referee to hear, try and determine the same and all matters in controversy therein, and to take proof against all parties in default." It seems the referee rendered his report on the 24th of February, 1892, which was filed, and he settled an interlocutory judgment, upon notice, which was presented to a Special Term held on the 13th of April, 1892, and the interlocutory judgment was allowed by that court. The judgment contains extensive provisions, among others, one pro-

viding for a further reference and declaring the rights of several defendants as between themselves, and provides for the costs of this action and contains a contingent provision for the payment of any extra allowance that might be made in the final judgment, and provides for the collection from sundry defendants of amounts to be paid into court by paying the same to the county treasurer, and that from such funds so paid into court the treasurer's fees be allowed, and that he " pay the costs of this action to plaintiff's attorneys and to the attorneys of such other parties to whom costs may be adjudged hereinbefore directed, and such other and further costs and expenses herein as the court may allow and direct to be paid from said moneys, and that the residue of said fund be · paid over by said county treasurer to such person or persons, and in such sums, as the court shall direct by the final judgment to be entered herein." It also contained a provision that certain enumerated creditors " are required to exhibit and prove their claims and thereby make themselves parties to this action before the referee herein * * * on contributing and paying to plaintiff's attorneys their respective proportions of the expenses of this action to be then settled by the said referee, and in default thereof said creditors who are in default are to be precluded from all benefit of this judgment and from any distribution thereunder which shall be made, but claims of creditors which have already been proved before the referee are not required to be again proved." Over and beyond the provisions already quoted the decree declared liabilities and rights of sundry parties in appropriate language mentioned therein.

In *Maicas* v. *Leony* (22 N. Y. St. Repr. 149 ; S. C., 113 N. Y. 619) it was held that if the referee commit errors of law or of fact " they cannot be corrected by a motion made at Special Term to set aside the report and all proceedings thereunder, but by appeal from the judgment entered upon the report." The privilege of the plaintiff to discontinue an action is not absolute and unqualified. Whether an order of discontinuance shall be allowed ordinarily before a judgment is entered rests in the discretion of the court in which such an order is sought. (*Young* v. *Bush*, 36 How. Pr. 240 ; *Wilder* v. *Boynton*, 63 Barb. 547 ; *Carleton* v. *Darcy*, 75 N. Y. 375.)

In *Matter of Petition of Butler* (101 N. Y. 309) it is said that,

in the exercise of its power to control the entry of an order, there is a discretion, and that where no facts are stated, and nothing appears to show a violation of the right or interest of the adverse party, the plaintiff may discontinue. In the case in hand the plaintiffs' intestate, as a creditor, filed his bill in behalf of himself and others who were similarly situated who should come in under the bill and establish their rights.

In 2 Barbour's Chancery Practice, 169, it is said that in such a case " others are allowed to come in at any time, either before or after the decree, until the fund is actually distributed and paid out." And it is further suggested that " a creditor coming in under the decree takes the position of a complainant." And it is further stated " where a creditor files a bill in behalf of himself and all others who shall come in and prove their debts under the decree and contribute to the expenses of the suit, he may discontinue his suit at any time before there has been a decree therein for the benefit of himself and the other creditors. But, after a decree, he cannot deprive the other persons of the same class of the benefit of the decree if they think fit to prosecute it." That doctrine seems to be sustained by numerous cases that have arisen since the author used the language we have quoted.

In *Innes* v. *Lansing* (7 Paige, 583) it was said that such a creditor " may discontinue his suit at any time before there has been a decree therein for the benefit of himself and the other creditors."

In *Cummins* v. *Bennett* (8 Paige [2d ed.], 79) it was held that " it is a matter of course to permit the complainant to dismiss his bill at any time before decree upon payment of costs. But an order for leave to dismiss upon payment of costs is conditional ; " and in a note to that case it is said at page 81, viz. : " It is discretionary with the court to refuse a complainant permission to dismiss his bill if a dismissal would work a prejudice to the other parties." (*Bank of State of So. Carolina* v. *Rose*, 1 Rich. Eq. 292.) And in *Watt* v. *Crawford* (11 Paige, 472) the chancellor observed : " Before any decree or decretal order has been made, in a suit in chancery, by which a defendant therein has acquired rights, the complainant is at liberty to dismiss his bill upon payment of costs. But after a decree has been made by which a defendant has acquired rights, either as against a complainant or as against a co-defendant in the suit, the com-

plainant's bill cannot be dismissed without destroying those rights. The complainant, in such a case, cannot dismiss without the consent of all parties interested in the decree; nor even with such consent, without a rehearing or upon a special order to be made by the court."

In *Picabia* v. *Everhard* (4 How. Pr. 113) it appeared that the action was to foreclose a mortgage which had been assigned to one of the defendants, and in 1844 a decree had been entered in the suit by default, but it had not yet been enrolled, and the assignee, the petitioner, asked for relief, to be made a party plaintiff or for leave to vacate the decree of foreclosure and dismiss the suit, and the motion was denied; and in the course of the opinion delivered in that case it was said, "To establish a precedent which should give the plaintiff this right, especially after decree, might be made to operate vexatiously and oppressively. Every decree affects other rights besides those of the plaintiffs. All parties become interested in it, and any of them may take steps to have the effect of it," citing *Carrington* v. *Holly* (1 Dickins, 281) and several other cases.

*Brinckerhoff* v. *Bostwick* (99 N. Y. 194) is in harmony with the cases to which we have referred. In that case it said: "The action is really the action of all the stockholders, as it was necessarily commenced in their behalf and for their benefit. It could not have been commenced by one stockholder for himself alone. It is true that at any time before judgment the original plaintiff, before the others were made parties, could have discontinued the suit or could have settled his individual damages; * * * but if he had prosecuted the action to judgment, then the judgment would have been for the benefit of all the stockholders, and he would then have ceased to have control over it, because the rights of the other stockholders would at once have attached thereto." The rule was recognized in *Tremain* v. *Insurance Co.* (11 Hun, 286).

In *Mattison* v. *Demarest* (1 Robt. 722), alluding to the principle which we have already adverted to, the judge who delivered the opinion said: "But the moment the decree was entered in the suit the rights of the other creditors attached to it, and the proceedings in all the other suits were or might be stayed." And in that case, as well as *Averill* v. *Patterson* (10 N. Y. 500), it was intimated

that the rule as it existed in the old Court of Chancery had not been changed by the Code.

On the 20th of January, 1894, the appellant gave notice of a motion to be heard on the 3d of February, 1894, " For an order referring all matters in this action left undetermined by said interlocutory judgment, and thereby directed to be thereafter determined, to some suitable person to take proof thereof, and particularly of such debts made or owing by the Binghamton Hydraulic Power Company, and remaining unpaid and not heretofore proven and established in this action as the stockholders found liable to contribute to the payment of the debts of said company by said interlocutory judgment may be liable to pay thereunder," and to consider and determine the several particulars mentioned in the interlocutory judgment. On the 25th of January the plaintiffs gave notice of a motion to be heard at the same term " for an order permitting plaintiffs to discontinue said action without costs unless some of the parties hereto, creditors of said Binghamton Hydraulic Power Company, shall desire to proceed with the prosecution of said action in their own name, and in that case that such party or parties be required to pay to plaintiffs or their attorneys the sum of two thousand two hundred and six dollars and two cents ($2,206.02) for their expenses in this action, and that upon such payment an order be made substituting such parties plaintiffs herein and relieving these plaintiffs from further responsibility connected with the prosecution of said action." Several affidavits were read at the February Special Term in regard to the matters mentioned in the two notices of motion to which we have just referred, and the Special Term, held on the 3d of February, 1894, ordered a reference " to take the proofs of the parties and to report to this court the amount of the disbursements on behalf of the plaintiff in said action, and also the value of the services of Gill & Stillwell as attorneys for the plaintiff in said action to date." Proofs were taken before the referee mentioned in that order, and a report was made on the proofs, and the report and the motion papers were again brought before the Special Term held on the 2d of June, 1894, when the order appealed from was made. On looking into that order we find that it confirms the report of the referee who heard the matters relating to the motions and made his report bearing

date May 5, 1894. And the order also denied the motion " for the appointment of a new referee made on behalf of the Binghamton Publishing Company and other defendants," and granted the motion to the plaintiffs to discontinue, " unless within sixty days from the date of the entry of this order and the service of a copy of it, * * * the Binghamton Publishing Company and any other creditors of the Binghamton Hydraulic Power Company who may desire to further prosecute said action, shall pay to the plaintiffs or their attorneys the sum of $1,901.16, together with interest on $1,385.00 from February 21, 1893, together with $60.00 referee's fees paid by plaintiffs upon the reference herein." It appears by one of the affidavits used upon the hearing of the motions that some negotiations had been had in respect to a settlement of the action between the attorneys of some of the defendants. However, no written evidence of the settlement between any of the several defendants themselves, or between them and the plaintiffs, is produced. Nor is there anything in the affidavits indicative that the appellant ever gave assent to a settlement upon the terms that are mentioned in the motion papers. Nor is there any evidence in the motion papers tending to show that the attorneys had authority to settle upon the terms mentioned in the affidavits relating to the negotiations and the projected settlement. We have found nothing in the motion papers which warranted the court in refusing to name a referee in the place of Judge EDWARDS, who had died, after the entry of the interlocutory judgment. We think the Special Term ought to have appointed a referee to carry out the provisions of the interlocutory judgment. When such a hearing shall have taken place before the referee, and his report shall be brought before the court, and an application made based upon the interlocutory judgment and the report of such referee, an application for a final judgment, to accord with the provisions of the interlocutory judgment, may provide properly for the distribution of the funds and for the adjustment of the rights and liabilities of the several parties, and the proper allowances to be made in accordance with the tenor of the interlocutory judgment and the rules and practice in such cases. The foregoing views lead to the conclusion that the order appealed from should be reversed, and either party allowed to apply to the

Special Term to name a referee in place of Judge EDWARDS to hear the proofs of the respective parties, in accordance with the provisions of the interlocutory judgment.

MARTIN and MERWIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements to the appellant, with leave to either party to apply to the Special Term for the appointment of a referee upon the usual notice.