### THE AMERICAN STAR.

(Circuit Court of Appeals, Third Circuit. March 1, 1926.)

No. 3314.

**1. Shipping ⊜31—Preferred mortgage on ship held valid, though executed pursuant to bill of sale providing for standard form mortgage, given before enactment of Ship Mortgage Act (Ship Mortgage Act 1920, § 30, subsec. U [Comp. St. Ann. Supp. 1923, § 8146¼qq]).**

Where bill of sale of ship, dated January 27, 1919, provided for standard form mortgage to secure deferred payments, *held*, mortgage executed August 9, 1920, after Ship Mortgage Act 1920 (Comp. St. Ann. Supp. 1923, §§ 8146¼jjj–8146¼rr) had been enacted, in form a preferred mortgage, was valid as such, nor was agreement in bill of sale to give mortgage sufficient to constitute an equitable mortgage, within section 30, subsec. U (Comp. St. Ann. Supp. 1923, § 8146¼qq) declaring it inapplicable to any existing mortgage, to or any mortgage thereafter placed on any vessel now under an existing mortgage, so long as such existing mortgage remains undischarged.

**2. Maritime liens ⊜65—Lien is presumed to arise when necessary supplies are furnished vessel, without allegation or proof of reliance on vessel's credit.**

Lien is presumed to arise when necessary supplies are furnished vessel on order of owner or master, and allegation or proof that credit was given to vessel is unnecessary.

**3. Maritime liens ⊜65.**

Under Ship Mortgage Act 1920, § 30, subsec. P (Comp. St. Ann. Supp. 1923, § 8146¼ooo), one denying existence of lien on vessel for necessary supplies has burden of proof.

**4. Maritime liens ⟊38—One furnishing supplies to ship subject to preferred mortgage, who by ordinary diligence could have discovered master's lack of authority to bind ship, held without lien thereon (Ship Mortgage Act 1920, § 30, subsecs. P, R [Comp. St. Ann. Supp. 1923, §§ 8146¼ooo, 8146¼pp]).**

Under Ship Mortgage Act 1920, § 30, subsecs. P, R (Comp. St. Ann. Supp. 1923, §§ 8146¼ooo, 8146¼pp), one furnishing supplies to vessel subject to preferred mortgage, who by reasonable diligence could have known that master was without authority to bind vessel, *held* not to have lien thereon.

**5. Maritime liens ⟊6—Ship's general agent has no lien thereon for supplies furnished, nor can rule be avoided by acting through subagents.**

A general agent for ship is not entitled to lien for supplies furnished, he being presumed to have relied on credit of owner, nor can he avoid rule by proceeding through subagent.

Appeal from the District Court of the United States for the District of New Jersey; Lynch, Judge.

Libel by Laurie & Co., Limited, against the steamship American Star, her engines, etc., George W. Sterling, claimant, and the United States, intervening petitioner. Decree for the United States, and libelant appeals. Affirmed.

Bigham, Englar & Jones, of New York City (George S. Brengle and T. Catesby Jones, both of New York City, of counsel), for appellant.

Frank A. Bernero and Ira A. Campbell, both of New York City, for appellee Sterling.

Walter G. Winne, U. S. Atty., of Hackensack, N. J., and Ralph B. Romaine, of New York City, for the United States.

Before BUFFINGTON, WOOLLEY, and DAVIS, Circuit Judges.

DAVIS, Circuit Judge. This was an action brought by libelant to recover $15,500 for coal and supplies furnished the steamer American Star, in October and November, 1920, at Barbadoes, British West Indies. The American Star Line, Inc., hereinafter called the company, entered into an agreement on December 24, 1919, with the United States Shipping Board for the purchase of the steamer. The company was to pay $215 per ton, dead weight. She weighed 7,550 tons, and her purchase price accordingly was $1,623,250. The contract provided, that a cash payment of 25 per cent. should be made on the "closing date" of the sale, and certain stipulated amounts, evidenced by notes, every six months thereafter until the full purchase price was paid. The initial payment was made and the notes were given on December 27, 1919, and the steamer was delivered early in January, 1920. The notes were to be "secured by a first mortgage on said vessel, substantially in the form hereto attached," which was "a standard form of mortgage."

The mortgage, which was dated December 27, 1919, was as a matter of fact not executed and delivered until August 9, 1920. The Ship Mortgage Act (Comp. St. Ann. Supp. 1923, §§ 8146¼jjj–8146¼rr), providing for a preferred mortgage, had in the meantime, June 5, 1920, been passed by Congress. And so the mortgage was not a "standard," but a preferred, mortgage. Upon its delivery, the Shipping Board, acting for the United States, gave the company a bill of sale for the steamer. Both the mortgage and the bill of sale were recorded on August 11, 1920, at the customs house, New York, the home port of the steamer. The preferred mortgage was indorsed on the ship's papers, and a certified copy thereof was placed among her papers on board. The agreement of sale had been on the steamer since her delivery.

Upon the filing of the libel, the receiver of the company, which in the meantime had become insolvent, filed a claim for the steamer, and denied that the libelant had a lien against her on account of the supplies furnished under British or general maritime law. It is conceded that the issues are controlled by American, and not British, law. The United States intervened, and averred that it held a preferred mortgage, which was a first and prior lien on the steamer.

There are two issues here involved. The first is the status of the mortgage, whether or not it is preferred and a first lien on the steamer, and the second is whether or not the libelant has any lien, either first or second, because the provisions of the agreement of sale and of the preferred mortgage prohibited the creation of liens by the master or owner, and because the libelant is a representative or subagent of the general agent of the owner of the steamer. The District Court held that the United States had a preferred mortgage, which was a first and prior lien on the steamer, but it did not, except by implication, pass upon the second question.

Subsection U of section 30 of the Ship Mortgage Act (Comp. St. Ann. Supp. 1923, § 8146¼qq) provides that: "This section shall not apply (1) to any existing mortgage, or (2) to any mortgage hereafter placed on any vessel now under an existing

mortgage, so long as such existing mortgage remains undischarged."

[1] Appellant argues that the mortgage under consideration cannot be a preferred mortgage, because the agreement of sale required it to be a "standard form of mortgage," and that from early in January, 1920, when the steamer was delivered, this mortgage had been equitably in existence, and the United States was the equitable mortgagee. It admits that the mortgage has the earmarks of a preferred mortgage, but says that in law it is only the evidence of a mortgage which had been in existence since the sale of the vessel on December 27, 1919, or her delivery in January, 1920. This is shown, it asserts, by the first and last sentences of the mortgage:

"This mortgage, made as of the 27th day of December in the year one thousand nine hundred and nineteen, between American Star Line, Inc., * * * and United States of America."

"In witness whereof, the said party of the first part has caused its corporate name to be hereunto subscribed, and its corporate seal to be hereunto affixed and attested by its proper officers, the day and year first above written."

The mortgage, it is true, was provided for in the agreement of sale, several months before the Ship Mortgage Act was passed. The mortgage which the parties had in mind was a "standard form of mortgage"; a preferred mortgage being then unknown. The mortgage really does not purport to have been made on December 27, 1919, but was "made as of" that date. It was doubtless antedated to correspond with the date of the notes which it secured. While the mortgage in form is not substantially like the one attached to the agreement, yet if the mortgagor and mortgagee agreed, as they must have done, to change the form of the mortgage to a "preferred mortgage," they had the right to do so, if, in so doing, they did not violate the provisions of the act, nor any right of third parties.

There was, at the time of the execution of the mortgage on August 8, 1920, no existing mortgage, legal or equitable. Not all the terms of the agreement of sale had been completed. The matter had drifted along with the consent of both parties. On August 9, 1920, they modified the agreement by making the mortgage a preferred one. There being then no "existing mortgage" on the steamer, the provisions of the act did not prevent them from changing the form and terms of the mortgage.

11 F.(2d)—31

The appellant cannot complain, for at that time it did not have any claim against either party. It was two or three months before it furnished the supplies on account of which it now asserts its right to a lien. A copy of the agreement and of the mortgage were both on the steamer when the supplies were furnished, and had been, one for two or three months, and the other for nine or ten months. An inquiry would have disclosed this fact. If appellant chose to furnish coal and supplies without inquiry, or if it was in the possession of the facts and ignored them, it is responsible for its present position.

[2-4] Does the appellant have a lien for the coal and supplies furnished, second to the lien of the mortgage? The presumption is that a lien arises when necessary supplies are furnished to a vessel on the order of the owner or master, and it shall not be necessary to allege or prove that credit was given to the vessel. Any one who denies the existence of such a lien has the burden of establishing the contrary. Section P of the Ship Mortgage Act of June 5, 1920 (Comp. St. Ann. Supp. 1923, § 8146¼ooo); The Yankee, 233 F. 919, 147 C. C. A. 593. The agreement of sale contained the following provision:

"That this agreement will be carried as part of the ship's papers, and that the buyer shall take such other appropriate steps, as designated to it by the seller from time to time, or required by the circumstances, as will give notice to the world that the buyer's right, title, and interest in the said vessel is subject to the said mortgage and to this agreement, and that the buyer has no right, power, or authority to suffer or permit to be imposed on or against said vessel any liens or claims which might be deemed superior to, or a charge against, the interest of the seller in said vessel."

An inquiry by the appellant would have disclosed the information it contained. The sale had been completed, and the agreement, in a sense, as appellant contends, "had ceased to be operative before the supplies were furnished"; but it nevertheless showed that the seller still had an interest in the vessel, and that the buyer had "no right, power, or authority to suffer or permit to be imposed on or against said vessel any liens or claims" which might be deemed superior to the interest of the seller; and this very claim is so deemed by the libelant, and shows the wisdom of incorporating the provision into the agreement. Subsection R of the Ship Mort-

gage Act (Comp. St. Ann. Supp. 1923, § 8146¼pp·), provides that:

" * * * Nothing in this section shall be construed to confer a lien when the furnisher knew, or by exercise of reasonable diligence could have ascertained, that because of the terms of a charter party, agreement for sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor."

. This language did not leave the person furnishing supplies to rest on presumptions, but called upon him to exercise reasonable diligence to ascertain whether or not, because of the agreement of sale, "or for any other reason," the master was without authority to bind the vessel. The existence of the preferred mortgage is the "any other reason" why the master was without authority to bind the vessel for supplies and thus jeopardize the interest of the seller. The Northern Star (D. C.) 295 F. 366.

The mortgagor in the mortgage itself agreed "not to suffer nor permit to be continued any lien, incumbrance, or charge which has or might have priority over this mortgage of the vessel to the party of the second part." This means that the mortgagor would not suffer any lien to be created, nor permit one to be continued. It was the duty of the appellant to exercise reasonable diligence to ascertain whether the master had authority to impose a lien on the vessel, and, if it had done its duty, it would have ascertained that both the agreement and mortgage prohibited him from doing so. It is therefore responsible for what a diligent inquiry would have revealed. Gill, etc., Works v. United States (C. C. A.) 1 F.(2d) 964; Frey & Son, Inc., v. United States (C. C. A.) 1 F.(2d) 963; The Hoxie (D. C.) 291 F. 599; Standard Oil Co. v. United States (C. C. A.) 1 F.(2d) 961; United States v. Amos D. Carver, 43 S. Ct. 181, 260 U. S. 482, 67 L. Ed. 361.

[5] The American Star Line never knew the appellant or had any dealings with it. Lambert Bros., a New York corporation, with its principal office in New York, was the general agent of the company to supply its vessels with coal. Security of £10,000 had been furnished by the company to Lambert Bros. through the Equitable Company of New York. The appellant appears to have been a subagent of Lambert Bros., through which it furnished the supplies and brought suit. It is the well-established rule that a general agent is not entitled to a lien for supplies furnished as he is presumed to rely upon the credit of the owner. The Centau-

rus (C. C. A.) 291 F. 751; The Owego (D. C.) 292 F. 403; The West Irmo (C. C. A.) 1 F.(2d) 87. A general agent may not avoid the rule by proceeding through one of its subagents.

The decree of the District Court is affirmed.