## NORTH COAST STEVEDORING CO. et al. v. UNITED STATES et al.

(Circuit Court of Appeals, Ninth Circuit. March 7, 1927.)

No. 4831.

**I. Maritime liens ⬅⟶30—Agreement for sale of vessel held to sufficiently show buyer's want of authority to bind vessel for stevedoring services (Merchant Marine Act 1920, § 30, subsecs. P, Q, R [Comp. St. §§ 8146¼000–8146¼pp]).**

Agreement for sale of vessel, containing provision that buyer should not suffer to be continued any lien or charge having priority over title of seller, and requiring buyer to keep certified copy of agreement with ship's papers, and to take appropriate steps to give notice to the world that the buyer had no right, power, or authority to permit liens against vessel superior to interest of seller, held to sufficiently show buyer's want of authority to bind vessel for stevedoring services, in view of Merchant Mar-

ine Act 1920, § 30, subsecs. P, Q, R (Comp. St. §§ 8146¼ooo–8146¼pp).

2. Maritime liens ⊙⇒30—Stevedoring company held not to have exercised reasonable diligence in determining buyer's authority to bind vessel for services.

Stevedoring company, claiming maritime lien on vessel for services performed superior to lien of conditional seller of vessel, *held* not to have exercised reasonable diligence in determining buyer's authority to bind vessel for such services.

Appeal from the District Court of the United States for the Southern Division of the Western District of Washington; Edward E. Cushman, Judge.

Intervening libel by the North Coast Stevedoring Company and another against the United States and another. From a decree dismissing the libel, libelants appeal. Affirmed.

See, also, 285 F. 60.

Frank A. Huffer, William H. Hayden, and Gerald H. Bucey, all of Seattle, Wash., for appellants.

Thos. P. Revelle, U. S. Atty., and Chas. E. Allen, Dist. Counsel, U. S. Ship. Bd., both of Seattle, Wash., and Arthur M. Boal, Admiralty Counsel, and F. R. Conway, Asst. Admiralty Counsel, U. S. Ship. Bd., both of Washington, D. C., for appellees.

Before GILBERT, RUDKIN, and DIETRICH, Circuit Judges.

RUDKIN, Circuit Judge. By intervening libel the appellant asserted a maritime lien in the court below on the steamship "Henry S. Grove" for stevedoring services performed in loading and discharging cargo at different ports in the state of Washington. At the time the services were so performed the vessel was operated by, and in the possession of, the Atlantic Gulf & Pacific Steamship Corporation, under a contract of conditional sale executed by the United States, represented by the United States Shipping Board, and the United States Shipping Board Emergency Fleet Corporation. The lien was asserted by virtue of subsections P, Q, and R, § 30, of the Merchant Marine Act of 1920 (41 Stat. 1005 [Comp. St. §§ 8146¼ooo–8146¼pp]). These subsections provide, in substance, that any person furnishing repairs, supplies, towage, use of dry dock or marine railway, or other necessaries, to any vessel, whether foreign or domestic, upon the order of the owner of such vessel or of a person authorized by the owner, shall have a maritime lien on the vessel, which may be enforced by a suit in rem,

and it shall not be necessary to allege or prove that credit was given to the vessel. Subsection R further provides that nothing therein contained shall be construed to confer a lien when the furnisher knew, or by the exercise of reasonable diligence could have ascertained, that, because of the terms of a charter party, agreement for the sale of the vessel, or for any other reason, the person ordering the repairs, supplies, or other necessaries was without authority to bind the vessel therefor.

The agreement for the sale of the vessel in question contained provisions that the buyer should not suffer to be continued any lien or charge having priority to or preference over the title of the seller in the vessel; that the buyer should carry a properly certified copy of the agreement with the ship's papers, and take such other appropriate steps designated to it by the seller from time to time as would give notice to the world that the buyer had no right, power, or authority to suffer or permit to be imposed upon or against the vessel any liens or claims which might be deemed superior to or a charge against the interest of the seller, and other provisions not deemed material, in view of the fact that similar provisions have been so often construed by the courts of other jurisdictions.

The appellees resisted the claim of lien upon the ground that the appellant knew, or by the exercise of reasonable diligence could have ascertained, that, because of the terms of the agreement for the sale of the vessel, the buyer was without authority to bind the vessel for stevedoring services, while the appellant contended that the agreement for the sale of the vessel did not in terms provide that the buyer was without authority to so bind the vessel, and that, if it did so provide, the appellant did not know, and could not by the exercise of reasonable diligence have ascertained, that the agreement of sale contained any such prohibition.

The court below dismissed the intervening libel, and from that part of the decree the present appeal is prosecuted.

Two questions are thus presented for consideration: First, did the agreement for the sale of the vessel provide in terms that the person ordering the stevedoring services was without authority to bind the vessel; and, second, did the appellant know, or by the exercise of reasonable diligence could it have ascertained, that the person ordering the services was without such authority.

[1] While the prohibition against incurring liens is not as explicit as it might be, yet, when the agreement is construed as a whole,

it leaves no doubt in the mind that it was the purpose and intent of the seller to protect the vessel against claims and liens that would have priority to, or preference over, the title of the government. Such has been the construction uniformly placed on similar contracts in other jurisdictions. Standard Oil Co. v. United States (C. C. A.) 1 F.(2d) 961; Frey & Son v. United States (C. C. A.) 1 F.(2d) 963; P. H. Gill & Sons Forge & Mach. Wks. v. United States (C. C. A.) 1 F.(2d) 964; The Liberator (C. C. A.) 5 F. (2d) 585; United States v. Robins Dry Dock & Repair Co. (C. C. A.) 13 F.(2d) 808. See, also, United States v. Carver, 260 U. S. 482, 43 S. Ct. 181, 67 L. Ed. 361.

[2] The only inquiry made by the appellant was of the agent or local manager at Seattle and the Pacific Coast manager at San Francisco. These parties knew nothing about the terms of the contract of sale, or the ownership of the vessel, and made no representation as to either. The manager of the appellant testified that he asked the agent at Seattle if he knew the conditions under which the Atlantic, Gulf & Pacific Steamship Company had purchased the "Henry S. Grove" and other vessels, from the Shipping Board, or if he knew anything about the contracts with the Shipping Board, and he answered that he did not. The Pacific Coast manager testified that, prior to the rendition of the services in question, the officers of the appellant made inquiry of him as to the status of the Shipping Board in connection with the vessels operated by his company, and the witness informed them that the vessels were being operated as privately owned vessels. He was then asked if there was anything in their discussion to indicate that the government had sold the ships to the Atlantic, Gulf & Pacific Steamship Company, and had not parted with title, and the witness answered that they might have discussed that subject, but he gave them no information in regard thereto, because he knew nothing about it himself. It will thus be seen that the only inquiries made were of persons who did not know, and did not pretend to know, the facts. The officers of the appellant knew that the vessels had been purchased from the Shipping Board, and the testimony indicates very clearly that they had reasonable cause to believe that the vessels had been purchased under a contract of some kind. With this knowledge they made no inquiry of the master of the vessel, of the Shipping Board, at the home port, or from any person who would be at all likely to know the facts, or furnish the desired information.

The Liberator, supra, involved the same contract and one of the same parties, and the facts were very similar. The court there said:

"Briefly, the facts are these: The Atlantic, Gulf & Pacific Steamship Corporation was in possession under contract of purchase with the United States, represented by the United States Shipping Board Emergency Fleet Corporation and the United States Shipping Board, of six ocean-going vessels, of which the Liberator was one, engaged in the Pacific trade. The company, through its Pacific Coast office, in the month of January or February, 1922, had a general contract or understanding with the libelant for the stevedoring its ships at Grays Harbor. On the 22d of June, 1922, the Liberator entered the port of Grays Harbor to take on a cargo of lumber, and the company, acting through its port captain, in pursuance of the general understanding aforesaid, notified the libelant of the arrival of the vessel, and the latter promptly loaded the same. At the completion of the service, a bill therefor was rendered as usual, and in accordance with what had been the custom, through the company's branch office at San Francisco, but the same was not paid as theretofore, and it still remains unsettled for.

"The libelant, it seems, kept its account against each ship, its agents and owners, and in this service knew only the Atlantic, Gulf & Pacific Steamship Corporation, and its representatives, and took no steps to ascertain the rights of the government in the vessel, nor had it knowledge that any such rights existed. The ship flew the house-flag of the Atlantic, Gulf & Pacific Steamship Corporation, and the libelant's representative understood from that company's agent that that company was the owner of the vessel. The ship was registered in the name of the United States at San Francisco, as its home port, and the home port of the vessel was appropriately placed upon the stern of the vessel according to law. Libelant made no inquiry whatever as to the ownership of the vessel, either from those in charge of her, or at her home port * * *; and the liability here turns solely upon whether or not, in the circumstances mentioned, it was required to exercise a greater degree of diligence than it did."

And it was held that due diligence had not been shown.

Again, in P. H. Gill & Sons Forge & Mach. Wks. v. United States, supra, the court said:

"The libelant contends that the cases are

taken out of the rule requiring inquiry by the furnisher as to the right of a person in possession of a vessel to put a lien upon it by the fact that before the repairs were made and the supplies furnished the officers of the States Steamship Corporation represented that corporation to be the owner of the vessels. The statutory requirement of reasonable diligence on the part of a furnisher of a vessel to ascertain the authority of a person in possession to bind the vessel is not necessarily met by reliance on the mere statement of the person in possession that he is the owner. If such a statement were held always to take the place of inquiry from accessible sources, the statute would afford no protection to persons having the right to contract that their vessels should be kept free from liens."

The appellant suggests or contends that the burden of proof was on the appellees to show that the appellant knew, or by the exercise of reasonable diligence could have ascertained, that the buyer was without authority to bind the vessel. Inasmuch as all the facts are before the court, the question of the burden of proof is perhaps unimportant, but the contention itself seems to be unsound. The appellees proved that the person ordering the services was without authority to bind the vessel, and it was then incumbent upon the appellant to prove that it did not know, and could not by the exercise of reasonable diligence have ascertained, that such was the fact.

After quoting the statute in United States v. Carver, supra, the Supreme Court said:

"We regard these words as too plain for argument. They do not allow the materialman to rest upon presumptions until he is put upon inquiry, they call upon him to inquire. To ascertain is to find out by investigation. If by investigation with reasonable diligence the materialman could have found out that the vessel was under charter, he was chargeable with notice that there was a charter; if in the same way he could have found out its terms he was chargeable with notice of its terms. In this case it would seem that there would have been no difficulty in finding out both."

We are of opinion, therefore, that the findings of the court below are amply supported by the testimony, and the decree is accordingly affirmed.

DIETRICH, Circuit Judge (concurring). I join in the conclusion, but think burden was upon appellees, not only to prove want of power, but to make prima facie showing

either that appellants had knowledge or had reasonably available sources from which they could have ascertained knowledge of the fact. The Oceana (C. C. A.) 244 F. 80, 83; W. G. Coyle & Co. v. North America S. S. Corp. (C. C. A.) 262 F. 250, 256; Virginia Shipbuilding Corp. v. U. S. Shipping Board E. F. Corp. (D. C.) 11 F.(2d) 156, 158.