**In re H & S TRANSPORTATION COMPANY, INC., Debtor.**

C. Bennett HARRISON, Jr., Trustee, Plaintiff–Appellee,

v.

BRENT TOWING CO., INC., Defendant–Appellant.

C. Bennett HARRISON, Jr., Trustee, Plaintiff–Appellee,

v.

UNITED LIBERTY LIFE INSURANCE CO., Defendant–Appellant.

Bankruptcy Nos. 381–02803, 383–05863 and 383–0585. Civ. A. Nos. 3:88–0048, 3:88–0049.

United States District Court, M.D. Tennessee, Nashville Division.

Aug. 11, 1988. On Motion to Amend Sept. 2, 1988.

C. Bennett Harrison, Jr., Cornelius & Collins, Nashville, Tenn., for plaintiff-appellee.

H. Taylor Harris, Gullett, Sanford, Robinson & Martin, Nashville, Tenn., for United Liberty.

B. Gail Reese, Manier, Harold, Hollabaugh & Smith, Nashville, Tenn. and Warren Ashley Hines, Greenville, Miss., for Brent Towing.

### MEMORANDUM OPINION
### AND ORDER

NEESE, Senior District Judge, sitting by designation and assignment.

The Bankruptcy Court of this District ordered that the trustee in bankruptcy (trustee) for the debtor H & S Transportation Company, Inc. (H & S) recover $26,250.73 from Brent Towing Company, Inc. (Brent) and $149,586.98 from United Liberty Insurance Company (United). Those were the respective amounts of respective antecedent accounts of H & S for fuel furnished respective towboats of Brent and United, respectively, by suppliers which were paid by the debtor H & S to such suppliers 90 or less days before H & S filed its petition for bankruptcy herein under the Bankruptcy Code, ch. 11.

Such Court found that such payments constituted respective transfers by H & S of interests "of the debtor [H & S] in property

(1) to or for the benefit of a creditor [of H & S];

(2) for or on account of an antecedent debt owed [suppliers of fuel] by the debtor [H & S] before such transfer[s] w[ere] made;

(3) made while the debtor [H & S] was insolvent;

(4) made—

(A) on or within 90 days before the date of the filing of the petition * * *

(5) that enable[d] such creditor to receive more than such creditor would receive if—

(A) the case were a case under chapter 7 of this title [11 of the United States Code]"

and concluded that, under 11, U.S.C. § 547(b), such payments were "indirect preferences" avoidable properly by such trustee. 80 B.R. 441.

## I

It is noted at the outset that such transfers of funds of the debtor H & S are not avoidable under the Bankruptcy Code, 11 U.S.C. § 547(b), *supra*, unless, in fact and in law, Brent and United, respectively, was a "creditor" of H & S. Those appellants Brent and United defended the adversary proceedings which are the subject of these appeals on the ground, *inter alia*, that neither was or is a "creditor" of the debtor H & S for purposes of 11 U.S.C. § 547(b)(1).

It was concluded by such Court: "that United and Brent are creditors. The trustee established the existence of liens on United's and Brent's boats. These liens made United and Brent secondarily liable on the fuel debts if the debtor failed to pay. As a result of this liability, United and Brent held contingent indemnity claims against the debtor [H & S]." (The Court delineated this concept of the law and facts no farther in its opinion.)

"A [Bankruptcy] Court's conclusions of law are fully reviewable on appeal." *Matter of Multiponics, Inc.*, 622 F.2d 709, 713[2] (5th Cir.1980). This Court engages in such a review herein.

## II

Brent was the owner of a tugboat (the "Margaret Brent"), and United was the owner of a tugboat (the "Volunteer State"). Inland Transportation Company, Inc. (ITC) chartered each of these vessels from its respective owner.

In each of the respective charter parties with ITC, Brent and United availed itself of a simple and ready means of protection: each provided in such respective agreements with such charterer that creation of maritime liens or other encumbrances against and of such tugboats during the period of the charters was prohibited, *cf. Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co.*, 310 U.S. 268, 280, 60 S.Ct. 937, 943, 84 L.Ed. 1197 (1940). Therein, each such owner required the charterer ITC to display prominently on its vessel notice of this prohibition and to inform each supplier of necessaries thereto of such prohibition.

There was no ambiguity in either such charter party. "The material-man [here, supplier of fuel] when furnishing such supplies on the order of the charterer [wa]s charged with knowledge of the terms of the charter party when he c[ould] ascertain them, but when it appears that by these terms the charterer has direction and control of the vessel and that he is the one to obtain the essential supplies, *and that there is no prohibition of the creation of a maritime lien* [emphasis supplied by this writer], the material-man is protected by the terms of the statute [giving such maritime lien]. He furnishes the supplies on the order of the person authorized to obtain them and he is entitled to rely on the credit of the vessel as well as upon the credit of the one who gives the order." *Id.*

In this instance, the charterer ITC was "the one who g[ave] the order" to the suppliers, through personnel of the debtor H & S; the charterer ITC had hired H & S to operate Brent's and United's respective tugboats for a fee of $2,750 daily and reimbursement of expenses H & S accrued in such operations. H & S billed ITC monthly in advance for its fee and was reimbursed for the expenses for which it had paid, by ITC.

The record herein is devoid of any evidence of whether any supplier of necessaries to each of the vessels had notice of the prohibition against creation of maritime liens or other encumbrances against Brent's or United's tugboat. However, "[t]here is a presumption that every person has performed a duty enjoined by law or contract, unless the contrary appears." *Athens Roller Mills, Inc. v. Com'r of Internal Revenue*, 136 F.2d 125, 128[8] (6th Cir.1943); *accord: Cincinnati, N. O. & T. P. R. Co. v. Rankin*, 241 U.S. 319, 327, 36 S.Ct. 555, 558, 60 L.Ed. 1022 (1916) ("The law 'presumes that every man, in his private and official character, does his duty';

until the contrary is proved, it will presume that all things were rightly done, unless the circumstances of the case overturn this presumption").

■ It is abundantly clear in the record herein that personnel of ITC had a duty under the respective charter parties with Brent and United to notify each supplier of fuel to the respective vessels that any activity in which H & S engaged was not to work to create a maritime lien thereon. If that duty was performed, as enjoined upon ITC by contract, no lien was created on either such vessel in favor of suppliers of fuel to operate it; and nothing in the record herein suggests anything to the contrary of the due performance by ITC of that duty.

■ Although the law presumes also that a maritime lien on a vessel arises when necessary supplies are furnished to it on the order of its owner or its master, *The American Star*, 11 F.2d 479, 481[2] (3d Cir.1926), with application of the aforementioned presumption, that ITC performed its duty of notification of the pertinent suppliers, Brent and United discharged its respective burden of establishing the contrary (of such arising of such lien), negating the presumption that such lien did arise.

■ With these applications of the pertinent law to the pertinent facts of these proceedings, it is beyond peradventure of a doubt that the Bankruptcy Court erred in its conclusion that either the appellant Brent or the appellant United was ever a "creditor" of H & S. In the Bankruptcy Code: a "creditor" is an "entity that has a claim against the debtor that arose at the time of or before the order for relief concerning the debtor," 11 U.S.C. § 101(9); and a "claim" is any "right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured," 11 U.S.C. § 101(4).

To conclude that, somehow or other, "United and Brent held contingent indemnity claims against the debtor [H & S]" under all the circumstances extant herein, amounts to pure speculation. No maritime lien on the respective vessel of Brent or United ever arose; fuel purchased by personnel of H & S for ITC was "necessary to keep the [vessels of Brent and United] going," *Dampskibsselskabet Dannebrog v. Signal Oil & Gas Co., supra,* 310 U.S. at 280, 60 S.Ct. at 943[8]; its personnel could hardly have obtained fuel had H & S not paid for it or the credit of H & S not been pledged for its payment; ITC reimbursed H & S for the amounts of its accounts with such suppliers; in so far as the proof shows herein, the appellants Brent and United had nothing at all to do with the transactions between ITC and H & S.

As there is no claim herein that H & S incurred contractually an obligation to indemnify Brent or United, any compensation by H & S for damage caused either of them, at least in Tennessee, "rests upon the principle that everyone is responsible for the consequences of his own wrong, and, if another person has been compelled to pay the damages which the wrongdoer should have paid, the latter becomes liable to the former." *Southern Coal and Coke Co. v. Beech Grove Mining Co.,* 381 S.W.2d 299, 302[5] (Tenn.App.1963), *cert. den.,* by Tenn.S.Ct. (1964). There is no evidence extant in this record that there was wrongdoing by the debtor H & S in any transaction affecting either of the appellants, Brent or United.

■ In addition, as no maritime lien ever attached to the tugboats of Brent and United, respectively, in regard to such transactions, the prebankruptcy payments by H & S of its accounts to the suppliers of fuel to those vessels provided no "benefit" to Brent or United. As the first-listed element of the preferential transfer claimed by the trustee-appellee herein is that such transfer have been "to or for the benefit of a creditor" of the debtor, H & S, 11 U.S.C. § 547(b), *supra,* it would be redundant to extend this review to a consideration of the other elements set-forth in such statute, *id.,* after the foregoing conclusion that neither Brent nor United was a "creditor" of the debtor H & S.

'Accordingly, the judgment of February 17, 1987 of the Bankruptcy Court of this District herein hereby is

REVERSED, and such judgment hereby is VACATED. Rule 8013, Bankruptcy Rules.

## ON MOTION TO AMEND

The appellants Brent Towing Company and United Liberty Life Insurance moved this Court to amend its judgment herein of August 11, 1988, vacating the judgment of February 17, 1987 of the Bankruptcy Court of this District. They desire such amendment to provide that the judgment of December 4, 1987 of such Court is also vacated.

In its underlying judgment of February 17, 1987, the Bankruptcy Court found that the pertinent payments to certain fuel suppliers were "indirect preferences" and, therefore, were avoidable properly by the trustee. In a subsequent order of December 4, 1987, such Court had granted prejudgment interest to the trustee on such payments.

In that this Court reversed the judgment of February 17, 1987 of such Court, it follows that its subsequent order of December 4, 1987 should be reversed. Accordingly, it hereby is

ORDERED that the judgment of the Bankruptcy Court of December 4, 1987 herein hereby is REVERSED, and such judgment hereby is VACATED.

The appellants request also that this Court release any appeal bonds posted with the clerk of such Bankruptcy Court, given to stay the enforcement of the aforementioned judgments of such Court, pending the appeal herein. This Court is aware of no authority which would allow it to grant such a request; such request, therefore, hereby is

DENIED without prejudice to the appellants' moving the Bankruptcy Court of this District for such a release.